KAREN FOSTER, Respondent, v ROBERT FOSTER, Appellant.

Second Department, February 14, 1984

APPEARANCES OF COUNSEL

*Lois Goland* and *David Leven* (*Paul Predmore* on the brief), for appellant.

*Leonard S. Clark* (*Bruce N. Roberts* of counsel), for respondent.

**OPINION OF THE COURT**

*Per Curiam.*

At issue on this appeal is whether a parent who is incarcerated is entitled to have his obligation to pay child support suspended during the period of his incarceration. In light of the defendant's financial inability, we answer that question in the affirmative.

When this divorce action was tried, the defendant husband was gainfully employed, earning $6.50 per hour. Subsequent to the trial, but prior to the issuance of the court's decision, defendant was convicted of manslaughter

in the first degree, sentenced to a term of 5 to 15 years' imprisonment and now "earns" 60 per day. Unaware of this change in circumstances, the court, in awarding the plaintiff wife a divorce, directed that a judgment be entered which, *inter alia,* ordered defendant to pay $200 per week child support.

Based upon his incarceration, defendant made a motion to modify the judgment by reducing his child support obligation to zero until his release. In his affidavit, defendant stated that he "owns no assets other than one half of the marital premises subject to mortgage". Plaintiff, who was awarded exclusive possession of the premises in the judgment of divorce, cross-moved for an order transferring title into her name alone.

Special Term reduced the support obligation by one half, noting that defendant had an asset, i.e., a half interest in the marital premises, which should be used towards child support. The cross motion was denied upon the ground that such relief could be had only in a plenary action. Defendant appeals from so much of the order as granted his motion only to the extent of reducing his child support obligation to $100 per week. We reverse.

We agree with the Oregon Court of Appeals that "[w]here a noncustodial parent is imprisoned for a crime other than nonsupport (or for civil contempt for failure to pay the same) * * * the better rule should be that the parent is not liable for such payments while incarcerated unless it is affirmatively shown that he or she has income or assets to make such payments" (*Matter of Edmonds,* 53 Ore App 539, 542).

Plaintiff urges us to follow *Matter of Vetternack* (334 NW2d 761, 763 [Iowa]), in which the Iowa Supreme Court refused to modify a support decree noting that "the petitioner's equity in the [marital] house should be charged for the support payments he is unable to meet during the period of his incarceration." She argues that we should direct that title to the marital premises be transferred to her alone.

There are several difficulties with that approach. First, plaintiff has not appealed from the order and, therefore, cannot obtain affirmative relief on this appeal (*Hecht v*

*City of New York,* 60 NY2d 57; *Molinoff v Sassower,* 99 AD2d 528). In addition, as Special Term noted, once a final judgment is entered in the matrimonial action, all questions of title, as opposed to possession, should be adjudicated in a separate, plenary action (e.g., *Shamsee v Shamsee,* 77 AD2d 618, 619; cf. *Reed v Reed,* 93 AD2d 105, 109-110).

More important, when, as here, the custodial parent does not intend to sell the marital premises, the *Vetternack* rationale makes no sense. As so well put by Justice SILVERMAN, "a release of the husband's equity in a house which is being used as a residence by the wife, and is probably not going to be sold, is an inappropriate and unsatisfactory way to provide for the support of a child which obviously requires current cash." (*Lea v Lea,* 59 AD2d 277, 279, mot for lv to app den 43 NY2d 646.) Concern must be with more liquid assets (e.g., *Baecher v Baecher,* 58 AD2d 821; *Clements v Clements,* 55 AD2d 943; *Matter of Schleimer v McMillan,* 54 AD2d 701), unless there is some indication, not present here, that the parent is deliberately holding down his earning capability (*Kay v Kay,* 37 NY2d 632).

Finally, since the defendant's default is not willful, his support obligation may be retroactively reduced (see, e.g., *Woicik v Woicik,* 73 AD2d 901; cf. *Rodgers v Rodgers,* 98 AD2d 386). We therefore reverse the order insofar as appealed from and grant defendant's application to the extent of suspending his obligation to pay child support *nunc pro tunc* from May 24, 1979 (the date of his incarceration) until the date he is released from prison.

TITONE, J. P., MANGANO, GIBBONS and BROWN, JJ., concur.

Order of the Supreme Court, Suffolk County, entered December 22, 1982, reversed insofar as appealed from, on the law and in the exercise of discretion, without costs or disbursements, and defendant's motion is granted to the extent that his obligation to pay child support payments is suspended *nunc pro tunc* from May 24, 1979 (the date of his incarceration) until the date he is released from prison. (We deem the notice of appeal dated November 23, 1982 to be a premature notice of appeal from the order.)