289 N.J. Super. 626 (1995)
674 A.2d 650
LOIS TOPHAM-RAPANOTTI, PLAINTIFF,
v.
ROBERT GULLI, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part Camden County.
Decided March 10, 1995.
*628 Lois Topham-Rapanotti, pro se.
Robert Gulli, pro se.
RAND, J.S.C.
I. Facts:
This case comes before the court on an application by defendant to reduce, terminate and/or modify his child support obligation while he is incarcerated. An order was entered on August 6, 1990, compelling defendant to pay $35.00 per week child support, based on defendant's then gross income of $97.00 per week. Defendant now claims he has been incarcerated since June 18, 1991, and is not eligible for parole until 1997. Due to his incarceration defendant's only income is now $1.60 per day or $35.00 to $50.00 per month depending on the number of days worked.
Defendant filed his first motion to suspend his child support obligation on April 20, 1993, claiming a lack of income and assets. The motion was denied by order of May 18, 1993. No appeal was taken from that order.
Defendant filed a second motion seeking to vacate the May 18, 1993, order. The motion was heard on November 19, 1993. Although defendant expressly waived oral argument, plaintiff, Lois Topham-Rapanotti, appeared at the motion hearing and was permitted to speak. She had not filed a response and appeared pro se. At the motion hearing plaintiff told the court that defendant did not pay his child support obligation even before he was incarcerated and that his incarceration did not change the pre-existing situation.
This second motion was denied on procedural grounds. The motion judge indicated that he had originally denied defendant's application on May 18, 1993, and he saw no reason to change or revise his prior order. The motion judge was satisfied that defendant's own conduct caused his incarceration and should not relieve him of his financial obligation to support his son.
*629 Defendant appealed that second decision. The matter was heard by the Appellate Division and was remanded back to the trial court for further proceedings. The Appellate Division stated it was inappropriate to permit plaintiff to be heard in court in the absence of defendant when defendant expressly waived oral argument and plaintiff did not file a written response. However, the Appellate Division did not rule on the issue of whether defendant's child support obligation should be suspended, vacated, and/or modified.
This court rescheduled the motion notifying both parties to be present.
The court must now determine whether a reduction, suspension, termination, and/or modification of child support is appropriate where the defendant is incarcerated and lacks sufficient income and/or assets to pay his current child support obligation.
This is a matter of first impression in New Jersey.

II. Legal Analysis:
The standard for modification of child support in New Jersey is whether either of the parties have had a change in circumstances. Lepis v. Lepis, 83 N.J. 139, 146, 416 A.2d 45 (1980). The party seeking a modification carries the burden of showing such changed circumstances as would warrant relief from the obligation. Id. at 151, 416 A.2d 45.
Various factors may constitute a change in circumstances, including a reduction in the income of the supporting spouse. Id. at 157, 416 A.2d 45. However, where the obligor's income changes as a result of a voluntary act, a reduction in child support may not be warranted. The New Jersey courts have routinely denied applications for modification of child support where the supporting parent voluntarily reduced his or her income, even when such a reduction was not taken for the purpose of avoiding the support obligation. In Bencivenga v. Bencivenga, 254 N.J. Super. 328, 603 A.2d 531 (App.Div. 1992), the court held that a parent who voluntarily *630 leaves the world of gainful employment, for however good a reason, does not thereby foreclose inquiry into the need for child support and the responsibility of the parent to supply it. Id. at 331, 603 A.2d 531. The court thus imputed income to an obligor mother who chose to stay at home to take care of her two new children. Id. Similarly, the Appellate Division refused to reduce the child support obligation where a doctor-husband voluntarily reduced his income from $110,000.00 per year to $17,000.00 per year by taking up a medical residency in a different specialty field. Lynn v. Lynn, 165 N.J. Super. 328, 398 A.2d 141 (App.Div. 1979). The court held that it was not necessary to find that the husband's alteration of circumstances was deliberately contrived to frustrate support obligations in order to deny the modification. In yet another such case, an obligor parent was laid off from his job. This parent attempted to find work only in his professed field. The court held that no modification was due where defendant remained voluntarily unemployed by refusing to seek work in other areas. Arribi v. Arribi, 186 N.J. Super. 116, 451 A.2d 969 (Ch.Div. 1982).
The issue of whether incarceration constitutes such a change in circumstances as to warrant relief from a support obligation has not yet been addressed in New Jersey. However, several other states have considered the issue. Two lines of cases have resulted from examination of the issue, one in which modification is granted, and the other in which it is denied.

States Which Grant Modification
Under the first line of thought, several states have granted modification of support based upon incarceration of the parent. These cases follow several lines of reasoning.
Initially, several of the states that grant modification look to the intent of the obligor in committing the act which resulted in the incarceration. The question presented there is whether the obligor was trying to avoid his or her support obligation by becoming incarcerated. If the evidence does not show "that the obligor's *631 action was not taken in good faith but was for the primary purpose of avoiding the support obligation", then modification of support will be considered. Willis v. Willis, 314 Or. 566, 840 P.2d 697, 699 (1992). See also Voecks v. Voecks, 171 Wis.2d 184, 491 N.W.2d 107, 109 (Ct.App. 1992); Pierce v. Pierce, 162 Mich. App. 367, 412 N.W.2d 291, 293 (1987); Foster v. Foster, 99 A.D.2d 284, 471 N.Y.S.2d 867, 869 (N.Y. App. Div. 1984). Thus, as long as the obligor is not committing a crime for the sole purpose of avoiding his or her support obligation, modification is not foreclosed. Pierce, supra, 412 N.W.2d at 293. Also, some courts have gone as far as to hold that incarceration is an involuntary situation, warranting relief from the support obligation under the change in circumstances standard. Leasure v. Leasure, 378 Pa.Super. 613, 549 A.2d 225, 227 (1988).
Next, several states that grant modifications look to whether the obligor has other assets that can be utilized to pay the support obligation. Id. If there are no assets and there is no showing that the obligor became incarcerated to avoid the support obligation, then the obligor is entitled to a reduction in support. Pierce, supra, 412 N.W.2d at 293.
Another consideration of the courts in the line of cases that grant modification is the best interests of the child. The Pennsylvania court in Leasure stated that, "barring an incarcerated and indigent parent from seeking a modification provides no present benefit to the child. Imposing upon the incarcerated parent a continuing support obligation, beyond his ability to pay, does not help the child. Rather it simply adds to an accumulating burden which falls upon the parent when he is least able to bear it." Leasure, supra, 549 A.2d at 227. See also Pierce, supra, 412 N.W.2d at 293.
Finally, the court in Pierce also suggested that holding a parent obligated to pay child support while he or she is incarcerated is in fact imposing an additional penalty on that person by "impos[ing] a judgement and itself mak[ing] the payment of that judgement impossible." Pierce, supra, 412 N.W.2d at 293.

*632 States Which do not Grant Modification

The second line of cases, on this issue of whether an obligor should be relieved of support payments while incarcerated, follows the view that incarceration is the result of a voluntary act and thus no relief in support should be granted.
First, many of these jurisdictions which do not grant modification, view a reduction in income due to incarceration as the result of a voluntary act, thus precluding a modification of support due to changed circumstances. See Mooney v. Brennan, 257 Mont. 197, 848 P.2d 1020 (1993); In re Marriage of Phillips, 493 N.W.2d 872 (Iowa 1992); Davis v. Vance, 574 N.E.2d 330 (Ind. 1991); Noddin v. Noddin, 123 N.H. 73, 455 A.2d 1051 (1983); Koch v. Williams, 456 N.W.2d 299 (N.D. 1990).
Criminal conduct of any nature cannot excuse the obligation to pay support. We see no reason to offer criminals a reprieve from their child support obligations when we would not do the same for an obligor who voluntarily walks away from his job. Unlike the obligor who is unemployed or faced with a reduction in pay through no fault of his own, the incarcerated person has control over his actions and should be held to the consequences.

Phillips, supra, 493 N.W.2d at 878. See also Mooney, supra, 848 P.2d at 1023; (quoting Willis v. Willis, 109 Or. App. 584, 820 P.2d 858, (1991).
Although the appellate court in Willis was reversed by the Oregon Supreme Court, Willis v. Willis, 314 Or. 566, 840 P.2d 697 (1992), this court finds the above language to be extremely persuasive. Several jurisdictions, as noted above, have chosen to adopt this line of reasoning. This court adopts and embraces this reasoning as being the most appropriate and persuasive resolution of the issue consistent with the line of thought in New Jersey relative to support modifications based upon a change in circumstance.
"Equitable relief will be denied to one who comes to the court with unclean hands." Noddin, supra, 455 A.2d at 1053. "A court must deny a petition for modification if the change in the party's financial condition is the result of the party's voluntary wastage of his or her own talents and assets." Phillips, supra, *633 493 N.W.2d at 877 (citing Ohler v. Ohler, 220 Neb. 272, 369 N.W.2d 615, 617 (1985); Noddin, supra, 455 A.2d at 1053).
A person who commits a crime must know that he or she may thereby become incarcerated. It is no secret that when criminals are caught they may go to jail. Ohler, supra, 369 N.W.2d at 618. To charge them with their child support obligation while they are incarcerated is certainly not double punishment. Koch v. Williams, 456 N.W.2d 299, 301 (N.D. 1990). It is simply an enforcement of an obligation which currently exists, especially when there is not even an attempt to collect until they are released from jail.
Finally, a lack of assets should not preclude collection of support. A lack of assets should not serve as a shield against a child support obligor's responsibilities. Phillips, supra, 493 N.W.2d at 877. The child's best interests will be served by having support accrue while his or her parent is incarcerated so that when the parent is released, he or she can begin to repay, on a weekly basis, the arrears that accrued while he or she was incarcerated.
The New Jersey Criminal Code sets forth the general requirements for culpability at N.J.S.A. 2C:2-2. The requirements of culpability are that a person is not guilty of an offense unless he acted purposely, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense. A person acts purposely with regard to the material elements of an offense if it his conscious object to engage in conduct of that nature or to cause such a result. He acts knowingly if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence. A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. A person acts negligently when he should be aware of a substantial and unjustifiable *634 risk that the material element exists or will result from his conduct.
One who commits a crime must by definition fit within one of these general elements. If one commits a crime purposely, knowingly, recklessly, or negligently, he or she commits such a crime voluntarily. The crime is the fault of the criminal. The court will not allow an innocent parent and child to suffer from the wrongdoing of the obligor parent. Thus, no reduction in support should be allowed. This is especially true in the case at hand, where the supporting parent's relationship with his child was not related to the reason for his incarceration.
In conclusion, this court finds that a person who commits a crime does so voluntarily. The foreseeable result of such a crime is punishment which clearly may include incarceration. When one lacks income or assets to pay a support obligation due to incarceration, no modification of support should be allowed. Incarceration is the result of a voluntary act and thus does not meet the standard for a change in circumstances in New Jersey.
Defendant's obligation to make continuous support payments shall be suspended but his arrears shall continue to accrue. A hearing should be scheduled after his release to review the arrearages and his payment obligation. The court shall take no action to collect the arrearages as long as he is incarcerated and unemployed.[1]
NOTES
[1] The court would also note that in many cases, an incarcerated parent may be eligible for work release at some point during his or her prison term. Thus an individual may have the opportunity to earn some money to be paid towards his or her support obligation even while he or she is incarcerated.