294 N.J. Super. 507 (1996)
683 A.2d 856
BERGEN COUNTY BOARD OF SERVICES (ASSIGNEE OF IRENE MARTY), PLAINTIFF,
v.
TODD STEINHAUER, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part Bergen County.
Decided March 5, 1996.
*508 Mitchell I. Steinhart, for plaintiff.
Todd Steinhauer, defendant pro se.
*509 KOBLITZ, J.S.C.
This case raises the all too common issue of whether an incarcerated parent's child support obligation continues during the period of such incarceration. Defendant obligor brings a motion to suspend his child support obligations. On May 26, 1992, a support order was entered requiring defendant to pay child support of $90.00 per week for three children based on a net income of $320.00 per week, with credit given for his child of another relationship living with him. Defendant certifies that he is now incarcerated at Southern State Correctional Facility serving a fifteen year sentence with a seven and one-half year parole disqualifier. He has no income or assets and has fallen into arrears as a direct result of his incarceration. He further certifies that he owes restitution in the amount of $59,000.00 as well as other fines and penalties of unknown amounts on the criminal matter for which he is incarcerated. Defendant's non-payment of support had resulted in a detainer being lodged against him which precluded him from obtaining minimum custody status or work release or participating in other rehabilitative activities offered to those inmates who do not have detainers lodged against them. (After his support obligation was lowered by order of this court prior to the issuance of this opinion, the detainer was lifted. He then began working in prison, earning between $30 and $40 per month, subject to a $10 reduction due to adjustments in inmate pay wages.)
The Bergen County Board of Social Services (Board), as assignee of Irene Marty, filed a responsive brief with the court arguing, among other things, that defendant voluntarily committed the criminal acts which forseeably resulted in his incarceration and thus should be accorded no relief. Additionally the Board argues that defendant might obtain assets while incarcerated, i.e. inheritance, law suit proceeds, lottery winnings (although while in full custody inmates have no access to the lottery). Lottery winnings or inheritance as sources of future income or assets have been held to be too speculative to call for a child support award. *510 Pasqua v. Pasqua, 16 Conn. App. 278, 547 A.2d 556, 557 (1988) (disabled obligor ordered to pay support based only on his ability at the time of the hearing); See also, Fattibene v. Fattibene, 183 Conn. 433, 441 A.2d 3 (1981) (evidence of possible inheritance too speculative).
While temporary loss of employment is not grounds for modification in New Jersey, Bonano v. Bonano, 4 N.J. 268, 72 A.2d 318 (1950); Innes v. Innes, 117 N.J. 496, 569 A.2d 770 (1990), long term incarceration is a significant change of circumstances which prevents the obligor from earning money to pay child support. Defendant is serving a lengthy sentence and cannot meet the support obligation that was ordered while he was employed. Defendant certified that he has no assets and the Board did not dispute this representation. Defendant does not have the ability or resources to continue paying support. Defendant's child support obligation will therefore, be suspended.
The State has a substantial interest in suspending arrears and support obligations of incarcerated obligors. The federal government provides funding to New Jersey and all other states for the collection of child support arrearages. 42 U.S.C. § 658(a) (1985). The amount of funding received is often related to the effectiveness of the collection methods as measured by the total statewide amount of arrears and efforts demonstrated to collect those arrears. Federal regulations require states to implement various mechanisms to effectuate collection of child support. See, State Plan Requirements, 45 C.F.R. § 302.70. A state may be exempted from these requirements and still receive federal funds if it can demonstrate that collection efficiency would not improve through full compliance. 45 C.F.R. § 302.70(d)(1). For instance, if a state's Aid to Family With Dependant Children (AFDC) assistance overpayments are above the national overpayment average, the state will lose some amount of federal funding, but that funding loss can be offset by a showing that the state's child support collection rate is either above the national average or an improvement over that state's collection rate for the preceding *511 three years. 45 C.F.R. § 205.43(e)(4). For federal funding to be reduced because incarcerated obligors do not pay arrears is totally counterproductive. If New Jersey does not suspend support for incarcerated payors, its statistics for collecting arrears will be skewed to its disadvantage when compared with other states which do suspend support obligations of parents in prison. Of course, even under the standards set forth here, the payor must move to modify support prospectively. No process to automatically review the support obligations of incarcerated payors exists in New Jersey. Many incarcerated payors are unlikely to take the affirmative action of asking for relief in a timely manner and thus will lose the opportunity for relief since New Jersey prohibits the retroactive modification of child support. N.J.S.A. 2A:17-56.23a. It would, therefore, be appropriate for the Legislature to address this matter statutorily to prevent a possible loss of federal funding. Until that time, those who do move for relief in a timely manner should be considered seriously on a case by case basis.
Many other states have dealt with an incarcerated payor's child support obligation. New York permitted suspension of child support even after a finding that the obligor retained an interest in the marital home. Foster v. Foster, 99 A.D.2d 284, 471 N.Y.S.2d 867 (1984). The court determined that the obligor's former wife still resided in the former marital home and did not intend to sell it any time in the near future. In Foster, the court suspended child support from the beginning to the end of incarceration for a prisoner whose support obligation was set during his incarceration. Id. at 869, 99 A.D.2d 284. In another case, the court reserved judgment regarding the advisability of modification of the accrued support arrearage until after the father's release at which time it would assess the father's good faith attempts to pay, indicating that a modification of the support order and the accumulated arrears could be granted at that time. Knights v. Knights, 71 N.Y.2d 865, 527 N.Y.S.2d 748, 522 N.E.2d 1045 (1988). Connecticut also suspended the child support obligation from the time that the father was incarcerated until he was released in another case where a support order was entered after the father *512 became incarcerated. Commissioner of Human Resources v. Bridgeforth, 42 Conn. Supp. 126, 604 A.2d 836 (Super.Ct. 1992). An Alabama court reduced a father's child support obligation on the basis of his incarceration. Murphy v. Murphy, 491 So.2d 978 (Ala. Civ. App. 1986). In Murphy, the court noted that prior to the incarceration, the father had the ability to earn some money although he was filing for bankruptcy. Once convicted of a felony, the motion to modify child support (on the basis of financial losses) was amended to entail incarceration as the reason for modification. Id. Wisconsin also affords relief to incarcerated payors. In re Marriage of Voecks, 171 Wis.2d 184, 491 N.W.2d 107 (Ct.App. 1992) (court reduced an incarcerated father's support obligation so that he would accrue less arrearages while in prison, stating that incarceration, although a result of deliberate acts, constituted a change of circumstances, and that the criminal conduct was not carried out in order to avoid paying support.).
In some states, such as in Illinois and Minnesota, support obligations have been completely suspended by virtue of the father's incarceration. See, e.g., People ex rel. Meyer v. Nein, 209 Ill. App.3d 1087, 154 Ill.Dec. 436, 568 N.E.2d 436 (1991) (considering incarceration as an involuntary loss of employment); Johnson v. O'Neill, 461 N.W.2d 507 (Minn. Ct. App. 1990) (holding that the mens rea to commit a crime is not the same as an intent to limit income, and reducing support commensurate with earnings in jail, since it would be unfair to expect more support than is earned).
In Pennsylvania, an incarcerated parent's child support obligation was suspended until after he was to be released from the prison. The court noted that it would not benefit his child to inflict an ongoing support requirement on a parent who had no assets and thus was unable to pay. Leasure v. Leasure, 378 Pa.Super. 613, 549 A.2d 225 (1988). The District of Columbia court vacated a child support award assessed on a father incarcerated for assaulting and attempting to kill his wife, noting that it was illogical to add an ongoing, accumulating debt to the prison *513 sentence since a prisoner cannot pay while imprisoned. Lewis v. Lewis, 637 A.2d 70 (D.C. 1994).
Idaho has ruled that child support obligations of an incarcerated parent could be modified subject to an affirmative showing of no assets by the parent. Nab v. Nab, 114 Idaho 512, 757 P.2d 1231 (Ct.App. 1988). See also, Carr v. Carr, 116 Idaho 754, 779 P.2d 429 (Ct.App. 1989) (remanding the denial of motion for modification of support obligation since evidence of father's assets was too speculative). Michigan has also taken assets into account when determining whether or not to modify a support obligation. Pierce v. Pierce, 162 Mich. App. 367, 412 N.W.2d 291 (1987) (modification granted and arrearages during incarceration discharged after finding that obligor lacked assets, but judgment of divorce gave obligor credit of $3,300 toward support for his equity in marital home). The Pierce court, in reversing the trial court and discharging the arrearages, noted that there was no evidence that the father had attempted to avoid his support obligation by becoming incarcerated. Id.
An Oregon Court suspended an incarcerated parent's support obligation due to lack of assets, but held that future access to income and assets, including recovery of property stolen from him, could be used to determine future ability to pay support. The court indicated that since the father had no assets, there had been a substantial change of circumstances justifying modification of the support obligation. In re Marriage of Willis and Willis, 314 Or. 566, 840 P.2d 697 (1992). Oregon had previously held that an incarcerated parent was not liable to continue child support payments while in jail unless an affirmative showing of assets could be made. In re Marriage of Edmonds, 53 Or. App. 539, 633 P.2d 4 (1981). The Delaware Supreme Court, in a similar vein, held that an incarcerated father's support obligation may be modified when all available assets that could be used to satisfy a support obligation are depleted. Division of Child Support Enforcement ex rel. Harper v. Barrows, 570 A.2d 1180 (Del. 1990).
*514 Most courts that have denied modification or suspension of child support obligations have done so because the incarcerated obligor possessed sufficient assets from which to pay support. See, e.g., Division of Child Support Enforcement ex rel. Harper v. Barrows, supra.; In re Marriage of Vetternack 334 N.W.2d 761 (Iowa 1983) (payor had equity in marital home); Sodders v. Sodders, 210 Neb. 276, 313 N.W.2d 927 (1981) (obligor had a trust fund sufficient to meet his obligation); Redmon v. Redmon, 823 S.W.2d 463 (Ky. Ct. App. 1992) (payor did not claim to be financially unable to satisfy the support obligation); Kuronen v. Kuronen, 499 N.W.2d 51 (Minn. Ct. App. 1993) (assets were available from a pension plan to satisfy the support obligation). Similarly, with regard to the use of existing assets to satisfy support obligations, the Wyoming Supreme Court held that such available assets or income could be used in determining continuation of an incarcerated father's support obligation. Glenn v. Glenn, 848 P.2d 819 (Wyo. 1993). A Washington appeals court held that a father's loss of income did not automatically preclude continuation of a support obligation when other assets exist from which the obligation could be paid, depending on the circumstances. In re the Marriage of Blickenstaff & Blickenstaff, 71 Wash. App. 489, 859 P.2d 646 (1993). Another court, in addition to noting that the obligor possessed some assets (equity in the marital home), also based its denial of modification on the fact that the obligor had voluntarily committed the crime for which he was imprisoned. Noddin v. Noddin, 123 N.H. 73, 455 A.2d 1051 (1983). A recent decision held that incarceration could not be the only factor used in determining modification of a support order, but was properly used as one of many factors, such as other available assets, in determining the appropriateness of such a modification. State of Arizona, ex rel. Department of Economic Security v. Ayala, 185 Ariz. 314, 916 P.2d 504 (1996).
Ohio is split with regard to suspension of an incarcerated father's support obligation, with one court saying that "no court was justified in ordering a man to do the impossible" and that criminal contempt proceedings for nonpayment in such circumstances *515 would be "unconscionable", analogizing incarceration to being fired by an employer. Peters v. Peters, 69 Ohio App.3d 275, 590 N.E.2d 777 (1990). But cf., Cole v. Cole, 70 Ohio App.3d 188, 590 N.E.2d 862 (1990) (incarceration a voluntary act, not constituting a change in circumstances).
Alaska is unusual in that the state passed legislation requiring mandatory minimum child support. That state, however, has held that an incarcerated father did not have to pay more than the statutory minimum if there were no assets. See, Clemans v. Collins, 679 P.2d 1041 (Alaska 1984), superseded by statute (Rule 90.3(c)(1)(B)), as stated in Douglas v. Department of Revenue, 880 P.2d 113 (Alaska 1994) (court vacated lower court's denial of an incarcerated father's request for modification of support obligation and remanded for factual determination of extent of obligor's assets, if any, saying that an incarcerated parent is not obligated to pay support unless the presence of income or assets is affirmatively shown); Hertz v. Hertz, 847 P.2d 71 (Alaska), cert. denied, 508 U.S. 955, 113 S.Ct. 2453, 124 L.Ed.2d 669 (1993) (applying a minimum support obligation pursuant to Alaska Civil Rule 90.3, after affirming lower court's suspension of support obligation from incarceration date, up to the date of application of Civil Rule 90.3, while holding that its application to him did not constitute an ex post facto law).
Only a few states refuse to suspend or modify an incarcerated parent's support obligation, using a fault based analysis analogous to that of an obligor intentionally selecting a low-paying job. Davis v. Vance, 574 N.E.2d 330 (Ind. App. 1991) (holding that suspension of child support payments as a result of willful and illegal conduct by the father would be against Indiana child support guidelines as well as public policy); State v. Nelson, 587 So.2d 176 (La. Ct. App. 1990) (incarceration does not excuse support obligation which can accrue and be paid off after release from prison); Koch v. Williams, 456 N.W.2d 299 (N.D. 1990) (since the father caused his own incarceration, the court would not modify the support obligation; after his release, the court could adjust the *516 payment of arrears according to the father's financial abilities; by statute the court can transfer the jailed father's assets, if any, to be used for child support.); In re Marriage of Hamilton, 857 P.2d 542 (Colo.Ct.App. 1993) (incarceration by itself was not enough to justify reduction of support obligation); Mooney v. Brennan, 257 Mont. 197, 848 P.2d 1020 (1993) (the court agreed that a change in financial status caused by voluntary actions of an incarcerated obligor did not justify temporary suspension of child support which could be paid off after release).
An obligor who voluntarily reduces his or her income by taking a lower paying job may have income imputed on the basis of earning potential. Lynn v. Lynn, 165 N.J. Super. 328, 398 A.2d 141 (App.Div. 1979). That obligor may then decide to seek a higher paying job in order to meet the obligation. The situation of the incarcerated obligor is different. An inmate does not have the ability to choose to increase income nor is the inmate choosing incarceration to avoid paying child support. One court has even suggested that a distinction be made between those who commit crimes in "good faith" and those who do so to avoid a child support obligation through incarceration. In re Willis v. Willis, 314 Or. 566, 840 P.2d 697, 699 (1992). Most people would not seek incarceration to avoid paying child support. Accordingly, work release is often used as a child support enforcement tool.
The fault based analysis has been used in New Jersey. Topham-Rapanotti v. Gulli, 289 N.J. Super. 626, 674 A.2d 650 (Ch. Div. 1996). In Topham-Rapanotti, the court compared commission of a crime resulting in imprisonment to voluntary unemployment or underemployment. Incarceration is more comparable to a long term disability preventing the individual from being able to work and requiring him to rely on public assistance for room and board. Long term disability constitutes sufficiently changed circumstances for a reduction in child support. Lepis v. Lepis, 83 N.J. 139, 151, 416 A.2d 45 (1980). Other courts have analogized incarceration to being fired from one's job with cause, since both *517 scenarios involve a curtailment of income as a direct result of a culpable act. Peters, supra.
Unfortunately, state prison inmates cannot support their families through currently earned income. All inmates are of necessity non-custodial parents. The innocent children of criminals inevitably suffer for the crimes of their parents. Society has chosen to accept this inevitable consequence of enforcing the criminal code. Frequently, the taxpayers must pay to incarcerate the parent and pay again to support the innocent child.
In so far as Topham-Rapanotti suspended the obligation to pay child support, this court agrees. This opinion diverges, however, from Topham-Rapanotti with respect to accumulation of arrears. Accrual of support arrears will not necessarily benefit the children, especially where arrears are unable to be collected. Should the defendant inherit money or obtain assets by other means he will be required to inform the plaintiff and consideration of these new circumstances will take place at that time. The Board may also apply for support based on defendant's prison earnings which began as a result of the lifting of the child support enforcement detainer.
Public policy supports suspension of child support obligations where the obligor is incarcerated, without assets, and therefore unable to pay. It undermines the public's confidence in the system if the court enters unenforceable orders. Courts must enter orders which are fair and reasonable and then enforce those orders without shrinking. As Judge Brennan noted in Siegel v. Siegel, 241 N.J. Super. 12, 15, 574 A.2d 54 (Ch.Div. 1990):
This court is constrained to further add that its orders, constructed solely of pen to paper, possess only as much vitality as either the willingness of litigants to adhere to them, or this court's willingness to take appropriate measures if they don't. Anything less perpetuates an unfortunate myth that the Family Court is often times too impotent or too timid to deal decisively and firmly with litigants who pervert the judicial process with impunity.
An incarcerated obligor whose arrears continue to accrue during the pendency of his sentence, will most likely be brought frequently before the court on enforcement proceedings after his release. *518 Realistically, he will rarely be able to pay the arrears and precious judicial resources and taxpayer funds will be expended in the attempt to collect. He will have little incentive to pay current support with insurmountable arrears accumulated during his incarceration. Most courts which have dealt with the issue have recognized that incarceration should be a factor in determining whether or not to modify or suspend child support obligations, unless the unlawful conduct occurred in order to avoid the obligation.
A two-pronged inquiry must be made in cases where an incarcerated obligor moves for a suspension of support and arrears. First, the length of the sentence; and second, the extent of the obligor's assets, if any. There is no bright line length of sentence that automatically qualifies an obligor for a suspension. Rather, the court must review each case to determine how soon the obligor may be released from custody. Ordinarily, short-term incarceration such as a county jail sentence of under one year would not constitute changed circumstances. Likewise, pretrial detention is not sufficiently permanent to warrant a suspension in child support. In determining the length of sentence, the court must look to the earliest release date. In cases with specified parole ineligibilities, determination is simple. In all other cases, the parole eligibility tables should be consulted. See R. 3:21-4(i).
If the obligor has assets, he or she should not be relieved of the support obligation. Just as an unemployed obligor is expected to dip into savings or otherwise liquidate assets to meet a support obligation, so should an incarcerated obligor. In the instant case, however, defendant has no assets. It is counterproductive to order payment of support when such payment is impossible due to the parent's incarceration. It is also counterproductive to create a "no-win" situation whereby the state's child support collection rate falls due to unenforceable support orders.
The court accordingly finds that defendant's child support obligation will be suspended and no arrears will accrue after January 16, 1996, the date of the filing of the motion.