727 So.2d 328 (1999)
Kim Lasky MASCOLA, Appellant,
v.
David LUSSKIN, Appellee.
No. 97-1937.
District Court of Appeal of Florida, Fourth District.
February 17, 1999.
Diane Tutt, Plantation, and Chriss Walker of Department of Revenue, Office of Child Support Enforcement, Tallahassee, for appellant.
*329 William L. Gardiner of Gardiner and Gardiner, P.A., Fort Lauderdale, for appellee.
FARMER, J.
In this child support case, the principal issue is whether the criminal conviction of the payor parent and resulting incarceration for a lengthy time is properly a basis to deny or reduce child support. We align ourselves with the third district, disagree with the second and fifth districts who have decided the issue to the contrary, and certify conflict.[1]
The father is a lawyer who was accused of soliciting the murder of his girlfriend after she became pregnant with twins. He was ultimately found guilty of two counts of solicitation to commit first-degree murder and two counts of solicitation to commit the killing of unborn quick children and was sentenced to 14 years in prison where he is now confined. Lusskin v. State, 690 So.2d 611 (Fla. 4th DCA 1997).[2] As a consequence of his conviction, the Florida Bar has disbarred him from the practice of law. The Florida Bar v. Lusskin, 707 So.2d 1127 (Fla.1998).
Before the criminal conviction, the trial court imputed $2,000 monthly income to the father and ordered child support for both children of $656 monthly. After the conviction and sentence, the father moved to modify the support and sought to have it eliminated while he serves his sentence, saying that as a convict he has no income and that none can be imputed to him because his incarceration is involuntary. The mother argued that the father had the ability to pay the $656 child support previously ordered, but through his own voluntary action and intentional conduct he divested himself of that ability. She argued that the action culminating with his arrest, conviction and incarceration was voluntary, self-induced conduct and thus is a legally insufficient basis to modify his support obligation. In granting the modification, the trial court found that the father's "current income is zero."
The vexing issue here is whether an incarcerated obligor parent without current actual income or assets is entitled to be relieved of the obligation to pay child support while imprisoned. To modify child support a payor must establish a substantial involuntary change in the payor's circumstances.[3]Overbey v. Overbey, 698 So.2d 811, 814 (Fla.1997) (requirement that change in circumstance to modify support be involuntary is to ensure that duty to furnish adequate support is not deliberately avoided); Chastain v. Chastain, 73 So.2d 66 (Fla.1954); Bernstein v. Bernstein, 498 So.2d 1270 (Fla. 4th DCA 1986) (change in circumstances must be material, involuntary and permanent in nature). Moreover, a court may, in its discretion, impute income to a spouse based upon past earnings and earning potential. Beers v. Beers, 23 Fla. L. Weekly D2370, 724 So.2d 109 (Fla. 5th DCA 1998); Warren v. Warren, 629 So.2d 1079 (Fla. 3d DCA 1994). Where a parent has an ability to earn, the trial judge should impute an income according to that which could be earned by the best efforts to gain employment equal to parent's capabilities, and on that basis an amount of support as if the parent were in fact earning the income so imputed. Hayden v. Hayden, 662 So.2d 713, 716 (Fla. 4th DCA 1995).
The pertinent cases are Pickett v. Pickett, 709 So.2d 182 (Fla. 5th DCA 1998); Waugh v. Waugh, 679 So.2d 1 (Fla. 2d DCA 1996); and Waskin v. Waskin, 484 So.2d 1277 (Fla. 3d DCA 1986), rev denied, 494 So.2d 1153 (Fla.1986). The second district in Waugh concluded that it was error to impute pre-incarceration *330 income to the obligor unless there was evidence that the obligor could actually earn that amount while imprisoned. 679 So.2d at 3. The conclusion was stated without any analysis or discussion. In Pickett, the fifth district simply followed Waugh, again without discussion. 709 So.2d at 183.
In Waskin, the third district held that the adverse impact on a former husband's financial situation from certain publicity and expenses did not justify a reduction in his obligations for child support and alimony. The publicity and expenses arose form defending himself against criminal charges that he had sought to hire someone to kill his ex-wife. The support issue occurred during the pendency of the criminal charges, and the facts showed that the father had spent all of his assets in defending the criminal charges and had virtually lost his medical practice. The decision and rationale of the third district are summed up in the following excerpts from its opinion:
"If, as the cases tell us, the clean hands doctrine prevents a court of equity from relieving a former husband of his obligation to pay alimony to his former wife where the decrease in the former husband's financial ability to pay (the requisite substantial change in circumstances) has been brought about by the former husband's voluntary acts of, for example, permitting a thriving medical practice to be closed down and making no effort to seek other employment, or otherwise willfully divesting himself of the ability to pay, then, most assuredly, the clean hands doctrine should have prevented the entry of the order under review which, inter alia, reduced the former husband's alimony and child support obligations. [c.o.]
. . .
"We have little difficulty concluding that Waskin's voluntary act in seeking to do away with his ex-wifethe epitome of unclean handswas the cause of his financial woes. What Waskin did to bring about his financial downfall is, quite obviously, far more condemnable than closing down a lucrative practice, failing to seek gainful employment, or going on spending sprees. It does not matter in this proceeding whether Waskin is ultimately convicted of the crime with which he is charged, even as it did not matter, the trial court's finding to the contrary notwithstanding, that when Waskin's motion to modify was filed and ruled upon, the criminal charges against him then stood dismissed. Whether a criminal jury concludes beyond a reasonable doubt that Waskin is guilty of solicitation, or, as happened, a trial judge in the criminal division concludes that Waskin's conversations with Tretola did not go far enough to become a crime, is simply not important in this matter of Waskin versus Waskin. What is important here is that the conversation between Waskin and Tretola indisputably occurred, that Waskin admittedly believed that Tretola was a `hitman,' and that in the conversation Waskin indisputably requested Tretola to do away with the ex-Mrs. Waskin. Under these circumstances, it can be readily said that Waskin's acts brought about his own arrest and prosecution, as well as the financial consequences of those events, whatever the outcome of the criminal proceeding." [e.s.]
484 So.2d at 1277, 1278-1279. Judge Pearson could well have been writing about the facts in this case.
To be sure, the crimes are different in these cases. The particular crime for which the obligors were incarcerated in Waskin and the present case is that they sought to have the custodial parent killed to avoid support obligations. Waugh does not state the crime for which the payor was convicted. In Pickett the payor was convicted of a crime unrelated to the underlying support obligation, namely Medicare fraud.
The States allowing the incarceration to relieve the obligor of some or all of the support obligation consider the obligor's intent in committing the crime resulting in the imprisonment. See, e.g., Willis v. Willis, 314 Or. 566, 840 P.2d 697, 699 (1992); Voecks v. Voecks, 171 Wis.2d 184, 491 N.W.2d 107, 109 (Ct.App.1992); Peters v. Peters, 69 Ohio App.3d 275, 590 N.E.2d 777 (1990); Pierce v. Pierce, 162 Mich.App. 367, 412 N.W.2d 291, 293 (1987); Foster v. Foster, 99 A.D.2d 284, *331 471 N.Y.S.2d 867, 869 (N.Y.App.Div.1984). In these States, if there are no assets and there is no showing that the obligor became incarcerated to avoid the support obligation, an obligor is entitled to a reduction in support payment. In fact, at least one court has squarely held that "incarceration is an involuntary situation, warranting relief from the support obligation under the change in circumstances standard." Leasure v. Leasure, 378 Pa.Super. 613, 549 A.2d 225, 227 (1988). The Pennsylvania court reasoned that:
"barring an incarcerated and indigent parent from seeking a modification provides no present benefit to the child. Imposing upon the incarcerated parent a continuing support obligation, beyond his ability to pay, does not help the child. Rather it simply adds to an accumulating burden which falls upon the parent when he is least able to bear it."
Id. The rationale of the second and fifth districts is consistent with these cases.
The Courts refusing to allow the incarceration to relieve the support obligation generally base their conclusion on the idea that imprisonment results from purposeful, intentional conduct and is therefore the result of a voluntary act. See Topham-Rapanotti v. Gulli, 289 N.J.Super. 626, 674 A.2d 650 (Ch. Div.1995); Mooney v. Brennan, 257 Mont. 197, 848 P.2d 1020 (1993); In re Marriage of Phillips, 493 N.W.2d 872 (Iowa App. 1992), overruled by In re Marriage of Walters, 575 N.W.2d 739 (Iowa 1998); Davis v. Vance, 574 N.E.2d 330 (Ind.App. 1991); Ohler v. Ohler, 220 Neb. 272, 369 N.W.2d 615 (1985); Noddin v. Noddin, 123 N.H. 73, 455 A.2d 1051 (1983); Koch v. Williams, 456 N.W.2d 299 (N.D.1990); see also Willis v. Willis, 109 Or.App. 584, 820 P.2d 858 (1991), reversed on appeal, 314 Or. 566, 840 P.2d 697 (1992). The third district's analysis in Waskin follows this view.
As the courts in New Jersey and Iowa have stated:
"Criminal conduct of any nature cannot excuse the obligation to pay support. We see no reason to offer criminals a reprieve from their child support obligations when we would not do the same for an obligor who voluntarily walks away from his job. Unlike the obligor who is unemployed or faced with a reduction in pay through no fault of his own, the incarcerated person has control over his actions and should be held to the consequences."
Topham-Rapanotti, 674 A.2d at 653; Phillips, 493 N.W.2d at 878. The New Jersey court also stressed that "[e]quitable relief will be denied to one who comes to the court with unclean hands." Topham-Rapanotti, 674 A.2d at 653. [c.o.] As that court also reasoned:
"A person who commits a crime must know that he or she may thereby become incarcerated. It is no secret that when criminals are caught they may go to jail. To charge them with their child support obligation while they are incarcerated is certainly not double punishment. It is simply an enforcement of an obligation which currently exists, especially when there is not even an attempt to collect until they are released from jail.
"Finally, a lack of assets should not preclude collection of support. A lack of assets should not serve as a shield against a child support obligor's responsibilities. The child's best interests will be served by having support accrue while his or her parent is incarcerated so that when the parent is released, he or she can begin to repay, on a weekly basis, the arrears that accrued while he or she was incarcerated." [c.o.]
Id. at 654, 674 A.2d 650. These views were echoed by the Nebraska supreme court in Ohler where the court stated:
"Incarceration of the applicant necessarily means that he was found to have violated a criminal statute. It seems to us that where one seeks relief from the obligation to pay child support on the basis that he or she is incarcerated, the violation of the statute which resulted in the incarceration is directly connected with the matter of child support. Under those circumstances equity should not and will not act to give relief.... [O]ne's child support obligations should not be modified where the means with which to pay were reduced or eliminated by criminal activity strikes us *332 as sound. Incarceration is certainly a foreseeable result of criminal activity; we find no sound reason to relieve one of a child support obligation by virtue of the fact that he or she engaged in criminal conduct. There is no reason those who have had to step in and assume the applicant's obligation should not be reimbursed by the applicant should his future position enable him to do so.
Further, we do not see how the best interests of the children for whom the support was ordered would be served by temporarily terminating the applicant's child support obligation."
Ohler v. Ohler, 369 N.W.2d at 618.
To us, the conclusions of these latter courts seem more agreeable to Florida law. In this state, guilty knowledge or mens rea is an element of every crime, unless the legislature dispenses with the knowledge requirement in specific crimes. Chicone v. State, 684 So.2d 736, 741 (Fla.1996).[4] The crime of solicitation to commit murder is indisputably one that requires guilty knowledge or mens rea.[5] Hence the father's conduct leading to his imprisonment had to have been voluntary on his part.
At the same time, modification of child support is governed by chapter 61, and proceedings under chapter 61 are in equity and are covered by the basic rules of fairness. See § 61.14(1) ("court has jurisdiction to make orders as equity requires"); Rosen v. Rosen, 696 So.2d 697, 700 (Fla.1997) ("proceedings under chapter 61 are in equity and governed by basic rules of fairness"). To paraphrase what Judge Pearson said in Waskin, the clean hands doctrine should surely disabuse a court of equity from relieving a father of his obligation to pay child support where the decrease in his financial ability to pay has been brought about by his voluntary act of attempting to kill the other parent to escape the duty to pay the support. 484 So.2d at 1277. It is especially ironic in this case that reducing support because of the criminal conviction would allow the father to accomplish his very motive for committing his crimeto avoid having to support his children.
Moreover, because it is fundamental, the duty to support one's children preexists other duties voluntarily assumed or imposed by law. It exists as a result of parenthood and came into force before any criminal conviction. So it can hardly be said that continuing that duty results in double punishment. Indeed, child support is not a form of punishment at all but is instead a duty resulting from procreating children.
As in Waskin, so it is in this case that the extraordinary expenses in attorney's fees to defend against the criminal charges, and the reduction in income from the father's law practice resulted from his own voluntary acts, conduct that was wholly within his control, and thus are insufficient to relieve him from the ongoing obligation to support his children. See also Pitts v. Pitts, 626 So.2d 278 (Fla. 1st DCA 1993) (clean hands doctrine precludes court from relieving party of support obligations when decrease in ability to pay results from party's own voluntary conduct); Linn v. Linn, 523 So.2d 642 (Fla. 4th DCA), rev. denied, 534 So.2d 400 (Fla. 1988) (self-induced income tax problems cannot justify reduction in child support obligations).
The mere fact that while imprisoned the obligor will not be able to make actual payment of the support arising from the income imputed to him, and therefore may not be held in contempt for failing to do so, see Bowen v. Bowen, 471 So.2d 1274 (Fla.1985), hardly justifies eliminating or reducing the basic support obligation itself. We thus distinguish fixing the monetary amount of the *333 duty from the remedies for breach of it. His incarceration may relieve him from the use of contempt to coerce payment, but that is no cause to reduce the amount of the support where the failure to pay results from the payor's voluntary conduct. The arrearages can continue to accumulate until the obligor returns to the work-a-day world and begins to earn actual income. It will then be appropriate for the court to establish a payment plan to reduce or eliminate the arrearages in accordance with his income-earning ability. Most assuredly it would be in the children's best interest to have the unpaid support payments grow in the expectation that one day the father will have the ability to make actual payment.
We therefore hold that child support obligations may not be modified where the current decrease in income results because the payor has been convicted for attempting to kill the mother in order to eliminate the support obligation. We certify conflict with the Florida decisions holding to the contrary. On remand the trial court shall enter an order denying the attempted modification, for that was essentially the only reason given by the father for reducing or eliminating support payments.
REVERSED AND CONFLICT CERTIFIED.
GUNTHER, J., and DONNER, AMY S., Associate Judge, concur.
NOTES
[1] On all other issues, we affirm.
[2] Our opinion in the appeal of the criminal conviction makes clear that the father first tried to get the mother to have an abortion and when she refused attempted to hire a "hit man" to kill her, saying "I want to make sure she does not give birth to those two kids. How, I don't care." 690 So.2d at 612.
[3] See § 61.14(1), Fla. Stat. (1997) ("[W]hen a party is required by court order to make any [support, maintenance, or alimony] payments, and the circumstances of or the financial ability of either party changes ... either party may apply ... for an order decreasing or increasing the amount of support, maintenance, or alimony, and the court has jurisdiction to make orders as equity requires, with due regard to the changed circumstances or the financial ability of the parties or the child, decreasing, increasing, or confirming the amount of separate support, maintenance, or alimony provided for in the ... order.").
[4] See also Dennis v. United States, 341 U.S. 494, 500, 71 S.Ct. 857, 95 L.Ed. 1137 (1951) ("[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence."); see also Chicone, 684 So.2d at 743.
[5] See § 777.04(2), Fla. Stat. (1997) ("A person who solicits another to commit an offense prohibited by law and in the course of such solicitation commands, encourages, hires, or requests another person to engage in specific conduct which would constitute such offense or an attempt to commit such offense commits the offense of criminal solicitation, ranked for purposes of sentencing as provided in subsection (4).").