POLEN, J.
This appeal arises from a Final Judgment Modifying Child Support, reducing the father’s obligation for the four children from $3000 per month (plus 10% of his gross annual earnings in excess of $75,000) to $512.42 per month. We reverse and remand for further proceedings for the reasons stated below.
On November 8, 2000, the trial court rendered its Final Judgment dissolving the marriage of the father and the mother and adopting and incorporating their June 27, 2000, Comprehensive Mediation Settlement Agreement. All four children born of the marriage were minors at the time of the divorce. Prior to the divorce, the father had for ten years owned M & J Technologies, a computer company that he built “from scratch” that worked on IBM mainframe computers. He was president of that company, which employed about thirty people. He sold M & J Technologies in 1999 for $800,000. The father is still anticipating a final payment of $120,000 from that sale, of which he will receive $50,000 and the mother will receive $70,000, per the dissolution agreement. At the time of the dissolution, the father was the chairman of a telephone company that was publicly traded on NASDAQ. He started the company and at its peak it employed thirty-five people in nine states. His salary was $75,000 per year. He acted *366 as an outside sales person, selling telephone systems.
At the time of the divorce, the parents and children resided in Palm Beach County. The Comprehensive Mediation Settlement Agreement designated the mother as the primary residential parent. The Agreement states that “[t]he mother intends to relocate the children and the father consents to the relocation of the children to Sarasota County, Florida.” She did in fact relocate to Sarasota County with the children.
In November 2001, the father moved himself and his business to Sarasota County to be nearer to his children. He testified: “I didn’t do it because I made more money. I took a huge, huge loss in my life.” The father operated the telephone company until February 2002, when the company folded because it was not able to compete with the established businesses in Sarasota. He chose not to reestablish the company in Palm Beach County, where he previously did business, because he “was spending 14 hours every other weekend commuting to get [the] children.” In August 2002, he started working at a landscaping company owned by his current wife for six dollars an hour. The father subsequently filed a petition seeking the reduction of his child support obligation. A hearing was held on the father’s petition on March 25, 2003, before the Commissioner General Master.
In addition to the evidence presented above, the father testified regarding his employment prospects. He stated that there are no high paying jobs in Sarasota. He also testified that he has headhunters, and that he had applied for jobs with headhunters and by himself up until August 2002 when he went to work for his present wife’s new landscaping company. He stated that he had not applied for any jobs in computers, telephone systems, management, or sales in the month prior to the March 25, 2003, hearing. He also stated that if a headhunter was to bring him a management job he would definitely apply for it, but that he could not go out and seek such jobs. He testified that he could not take off from work at his landscaping job to apply for more lucrative positions because he is paid an hourly wage. He also explained that he has had difficulty finding a better-paying position because he has only earned his GED and does not have a college degree. He stated that “what I’m now trying to do is I’m trying to build another company.” The father further testified: “I called for this motion because I made major changes in my lifestyle.... I made a major change to move over to be near my children. It cost me money. I couldn’t drive the 14 hours every other weekend to be with the kids. Plus I was losing my Wednesdays; I wasn’t even getting to see them.”
On June 13, 2003, after being fully advised as to the hearing before the Commissioner General Master, the trial court rendered its Final Judgment Modifying Child Support. The Final Judgment modified the child support, reducing the father’s obligation to the four children from $3000 per month (plus 10% of the father’s gross annual earnings in excess of $75,000) to $512.42 per month.
The Department of Revenue (DOR) moved to vacate the child support modification, arguing that the Commissioner “misapplied the law and acted unreasonably when he found that there was a substantial, permanent, material, and involuntary change in circumstances and refused to impute income to the [father].” The trial court issued an order denying DOR’s motion, and DOR timely appealed.
The standard of review of a trial court’s order to decrease child support is *367 abuse of discretion. Joseph v. Joseph, 871 So.2d 985, 986 (Fla. 4th DCA 2004). There is an even more stringent standard of review when a party tries to decrease support from a prior agreement, see Tietig v. Boggs, 602 So.2d 1250, 1251 (Fla.1992). “To modify child support a payor must establish a substantial involuntary change in the payor’s circumstances.” Mascola v. Lusskin, 727 So.2d 328, 329 (Fla. 4th DCA 1999). The purpose of the requirement that the change in circumstance must be involuntary to modify support is to ensure that the duty to furnish adequate support is not deliberately avoided. Overbey v. Overbey, 698 So.2d 811, 814 (Fla.1997). Additionally, this court stated that
a court may, in its discretion, impute income to a spouse based upon past earnings and earning potential.... Where a parent has an ability to earn, the trial judge should impute an income according to that which could be earned by the best efforts to gain employment equal to parent’s capabilities, and on that basis an amount of support as if the parent were in fact earning the income so imputed.
Mascola, 727 So.2d at 329. Furthermore, the change in circumstances must not have been contemplated at the time of final judgment of dissolution. Pimm v. Pimm, 601 So.2d 534, 535 (Fla.1992). See also Lewis v. Lewis, 450 So.2d 1123, 1124 (Fla. 2d DCA 1983).
The father’s relocation subsequent to the divorce was a foreseeable event, since the Comprehensive Mediation Settlement Agreement states that “[t]he mother intends to relocate the children and the father consents to the relocation of the children to Sarasota County, Florida.” Accordingly, the father was aware when he entered into the settlement agreement that it was very forseeable that the children would relocate to Sarasota County. The settlement agreement also established a parenting schedule for the parties. It is therefore reasonable to assume that the schedule was fashioned with the possible location of the children in mind, since there is no mention in the agreement of modifying the schedule if relocation occurred. The mother moved to Sarasota County with the children, as anticipated. Nothing in the record illustrates that the father objected to the relocation. The father relocated solely to be nearer to his children. He testified: “I didn’t do it because I made more money. I took a huge, huge loss in my life.... I’m putting my children first, not the revenue.”
When his telephone company folded in February of 2002 because it could not compete in Sarasota, he chose not to reestablish the company in Palm Beach County, where he previously did business, because of the time he would spend commuting to get the children.[1] He testified that he had not applied for any jobs in computers, telephone systems, management, or sales in the month prior to the March 25, 2003, hearing and he had not applied for jobs with headhunters or on his own since August of 2002. Instead, he was working at a landscaping company owned by his current wife for $6.00 an hour. He testified that his failure to secure employment similar to his previous experiences resulted from not being able take off from landscaping job to apply, as he is paid an hourly wage, and from his having earned only a GED, not a college degree.
The trial court specifically found that “[t]he Former Husband may be capable of earning a higher salary but there has been *368 no substantial, competent evidence to show whether management positions are available to him and, if so, what his potential salary would be. Therefore, the Court is not willing to impute income to the Former Husband.” We hold that the record below does hot support the conclusion that the father is not underemployed as a $6.00 an hour landscaper, based upon his previous work experience in successfully starting and running two companies. We therefore hold that it was error for the trial court to not impute income to the" father. We remand this case to the trial court to determine how much income can be properly imputed to the father. See Russell v. Russell, — So.2d --- (Fla. 4th DCA 2004) (affirming trial court’s ruling imputing husband’s income at $350,000 instead of the $300,000 husband stated as his yearly income, despite the absence of specific evidence as to the $350,000 figure).
In addition, as the trial court recognized, the father anticipates receiving $50,000 as part of the sale of a former business. A court may order child support to be paid from nonrecurring income or assets only if the recurring income is not sufficient to meet the children’s needs. § 61.30(13), Fla. Stat. (2003). Before the court may invade a nonrecurring income or asset, it must make a written finding as to whether the child’s needs were being met by the payor’s recurring income. Clayton v. Lloyd, 707 So.2d 407 (Fla. 4th DCA 1998). Neither the hearing on the motion for modification nor the trial court’s Final Judgment addressed the issue of whether the children’s needs would be met on the modified monthly child support payments. Therefore, we also remand this case for the trial court to determine whether the children’s needs are being met by any modified support payments or whether the court should invade the father’s anticipated nonrecurring income of $50)000.
REVERSED AND REMANDED.
GUNTHER and STONE, JJ., concur.

. The record does not reflect any consideration of the father’s ability, if any, to run a business in Palm Beach County from his new home in Sarasota through the use of a computer, modem, and telephone. It is clear that he is skilled in the use of such technology.