846 So.2d 486 (2003)
DEPARTMENT OF REVENUE, Petitioner,
v.
Kelvin M. JACKSON, Respondent.
Department of Revenue, Petitioner,
v.
Morgan P. Tillery, Respondent.
Nos. SC01-913, SC01-914.
Supreme Court of Florida.
April 24, 2003.
*488 Charles J. Crist, Jr., Attorney General, and William H. Branch, Assistant Attorney General, Tallahassee, FL, for Petitioner.
R. Mitchell Prugh of Middleton & Prugh, P.A., Melrose, FL, for Respondents.
LEWIS, J.
We have for review Department of Revenue v. Jackson, 780 So.2d 342 (Fla. 5th DCA 2001), in which the court certified its holding to be in conflict with the decision of the Fourth District Court of Appeal in Mascola v. Lusskin, 727 So.2d 328 (Fla. 4th DCA 1999). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

Facts and Procedural History
The facts of these consolidated cases are virtually identical. In each, the father was initially ordered to pay child support with the payment having been later increased to address support payment arrearages. After entry of these support orders, each father was incarcerated for a crime unrelated to the support obligation, at which time the father filed a petition seeking the suspension or abatement of his child support obligation until his release from prison. The petitions were based upon allegations of the father's present inability to satisfy support obligations as a result of incarceration.
In each case, the trial court noted the interdistrict conflict with regard to the basic issue, but determined, as it was required to do, that the petition should be granted based upon the decision of the Fifth District Court of Appeal in Pickett v. Pickett, 709 So.2d 182 (Fla. 5th DCA 1998). The Department of Revenue (Department) timely appealed each order, and requested that the Fifth District Court of Appeal reconsider its Pickett holding in light of the Fourth District's Mascola decision. The Fifth District declined, stating: "Although this panel might decide these cases differently than did the Pickett panel, we elect to adhere to the rule of Pickett and certify that our decisions are in conflict with Mascola." Dep't of Revenue v. Jackson, 780 So.2d at 343. The Department has sought review in connection with the certified conflict, which requires this Court to determine whether a court should permit a parent to have a preexisting support obligation modified or suspended based upon an inability to fulfill the financial support obligation during a period of imprisonment.

Analysis
As the Fifth District recognized in its opinion below, two conflicting views *489 have emerged from the decisions of the Florida district courts of appeal on the issue of the modification of child support payment obligations of persons while incarcerated based upon a diminution of income. In the instant action, the Fifth District determined that modification is appropriate and it should continue to adhere to its prior holding in Pickett v. Pickett rather than adopt the Fourth District's analysis outlined in Mascola v. Lusskin. See Jackson, 780 So.2d at 343. In Pickett, the district court held that the trial court erred in imputing income for purposes of calculating child support to a father who was scheduled for sentencing on federal criminal charges, where there was "no showing that the husband had the capability while he was in prison to earn the amount imputed to him." Pickett, 709 So.2d at 183 (quoting Waugh v. Waugh, 679 So.2d 1, 3 (Fla. 2d DCA 1996)). The court in Pickett remanded the case to the trial court for consideration under the principles enunciated by the Second District in its Waugh decision. See id.
In Waugh, the Second District reversed the terms of an original support decree that was entered by the trial court while the father was incarcerated. See Waugh, 679 So.2d at 3. The trial court had imputed the father's preincarceration income for purposes of calculating his child support payments. See id. The Second District deemed the income attribution erroneous because there was no showing that the father had the capability to actually earn the imputed amount while incarcerated. See id. Thus, while Waugh held only that a support decree entered when the father is in prison must include in its calculations the father's present ability to pay, the court in Pickett extended this reasoning and applied it to circumstances where a support decree had been entered prior to the obligor's incarceration, and modification was sought after the party had been imprisoned. See Pickett, 709 So.2d at 183.
In stark contrast to the decision of the court in Pickett, the Fourth District arrived at a contrary holding in Mascola v. Lusskin, 727 So.2d at 329. The Mascola court held that "child support obligations may not be modified where the current decrease in income results because the payor has been convicted for attempting to kill the mother in order to eliminate the support obligation." Id. at 333. Although the direct holding was expressed in terms limited to the specific facts, the reasoning of the court was constructed with broad statements directed to the principle that the commission of any crime is a voluntary action which the obligor knows may result in incarceration and unemployment, and any modification petition based upon this direct consequence should be rejected. See id. at 332. Although the Fourth District noted the conflict with extant Florida decisions to the contrary, it reasoned that the child support payments should not be modified based on the father's decreased income resulting from voluntary conduct which resulted in incarceration. See id. at 333. While the holding was expressed extremely narrowly, application of the underlying reasoning adopted by the Fourth District would produce far-reaching results. We granted review of the instant case to resolve the conflict between these decisions rendered by District Courts of Appeal, and now conclude that we must quash the decision under review and remand with instructions.
Section 61.13, Florida Statutes (2001), provides a court that has entered an order requiring a parent to pay child support with continuing jurisdiction to modify the original order upon a showing of necessity to further the supported child's best interest, when the child reaches the age of majority, or if there is a substantial change *490 in the circumstances of the parties. See § 61.13(1)(a), Fla. Stat. (2001). Section 61.14, Florida Statutes (2001), contemplates that either party in the original action may seek modification of an order requiring the payment of support "as equity requires." See § 61.14(1)(a), Fla. Stat. (2001). It further provides that "any unpaid payment or installment of support which has accrued up to the time either party files a motion with the court to alter or modify the support order" may not be reduced by the court. § 61.14(6)(a)(3), Fla. Stat. (2001). However, any unpaid amount that accrues after the filing of a petition to modify may be reduced upon entry of an order on the petition. See id. Moreover, although section 61.30, Florida Statutes (2001), provides presumptive amounts for child support payments based on the supporting parent's monthly income and the number of children, the trial court is vested with discretion to vary the support amount after considering all relevant factors, including, but not limited to, the needs of the child, age, station in life, standard of living, and the financial status and ability of each parent. See § 61.30(1)(a), Fla. Stat. (2001).
This statutory framework provides the parameters within which the resolution of the current conflict must be reconciled. Florida simply does not permit a retroactive reduction of accrued amounts due for support, even if such an approach were in the best interests of both the child in having some amount, albeit smaller, actually paid, and the obligor parent in making a manageable payment rather than being faced with the often unattainable and unrealistic expectation to satisfy large vested arrearages. Recognizing the competing policies and divergent circumstances presented in this arena, we must find an answer that is predicated upon the fundamental goal of solving the human problem before us, rather than exacerbating an already difficult situation.
The instant action requires that this Court consider and address a purported internal conceptual conflict between the provisions in section 61.13 that provide a basis for the trial court to modify a child support decree when it is necessary to the child's best interests, and those which allow modification when there is a substantial change in the parties' circumstances. It is abundantly clear that a substantial change in circumstances, such as the incarceration of an obligor, certainly may not produce a result that is in a child's best interests. Although the public policy considerations underpinning the arguments on either side have some compelling components, in the instant situation we believe that the child's interest in receiving his or her support monies must generally supersede the obligor parent's substantial change in circumstance resulting from incarceration. The full and timely remitting of child support payments is certainly in the best interests of the supported child. Therefore, any abatement or waiver of support payments owed to the child would certainly harm the interests of the child. See Imami v. Imami, 584 So.2d 596, 598 (Fla. 1st DCA 1991) ("[C]hild support is a right which belongs to the child."); see also Cole v. Cole, 70 Ohio App.3d 188, 590 N.E.2d 862, 865 (1990) ("While [the parent] is incarcerated, the needs of his children are not diminished.... The only person to benefit if support is suspended would be [the parent].").
Notwithstanding this logic, practical considerations weigh heavily here, and cannot be simply ignored. It is clear that a substantial change in circumstances will almost always occur when a parent becomes incarcerated and, as a result, is separated from the capacity to earn income. There are situations where earned *491 income may not be a critical factor, but those cases are not the norm and our decision today is not directed to such circumstances. Moreover, a parent newly released from prison will, more likely than not, be without the means or ability to finance or satisfy a large accrued child support debt. Indeed, it is quite possible that he or she could never meet both the current payments and the debt that accrued during his or her imprisonment. See, e.g., In re Marriage of Barker, 600 N.W.2d 321, 323-24 (Iowa 1999) (holding that an incarcerated mother's reduction in income while in prison justifies a modification of support payments that takes into account inability for future payment of accumulating debt). The key is to find that structure that will most benefit the child entitled to support through a plan designed for realistic payments. Payments actually made are, most assuredly, more important than mere paper judgments. We find that the result attained by the New Jersey Superior Court in Halliwell v. Halliwell, 326 N.J.Super. 442, 741 A.2d 638 (App.Div.1999), is a just and fair approach for the resolution of the issues presented today. To be sure, this approach may not have the answer to absolutely all human situations, but it does provide a practical solution which recognizes the realities of child support and incarcerated parents.
The court in Halliwell, considering the question of whether incarcerated parents should be entitled to modify their child support payments, reasoned that the trial court should defer consideration of an incarcerated parent's motion for modification until the parent is released from custody. See id. at 646. Upon the parent's release, the trial court should then consider the motion in light of the contemporary circumstances of all the parties involved and enter a judgment appropriate at that time. See id. Importantly, under New Jersey's equivalent of section 61.14, this method eliminates the problem of vesting ever-increasing arrearage amounts because any payments accruing after the motion is filed may be modified, based upon the circumstances revealed at the hearing after the obligor's release from prison. See id. This provides flexibility for the court to address all issues and construct a judgment that will both recognize the support obligation and provide a realistic plan for payment.
We conclude that the New Jersey court's logic and course of action is well-founded, and that it recognizes and accommodates the competing concerns and interests presented in this case. Therefore, pursuant to section 61.14(1)(a), a parent seeking modification of child support payments because he or she is unable to pay the installments due to incarceration may file a petition to modify with the trial court that entered the original child support order. Thereafter, the trial court shall hold the petition in abeyance and place the matter on its inactive calendar for the term of the obligor parent's incarceration. During this time, the petition is not subject to dismissal for failure to prosecute, and the relationship of the incarceration to support is good cause to delay activity. The support installments, although still outstanding according to the original payment schedule, do not accrue as a vested interest of the child to be reduced to judgment which cannot be altered.[1] While the petition remains on the inactive calendar, *492 the matter is not subject to the guidelines for proper disposition of cases provided in the Florida Rules of Judicial Administration. See Fla. R. Jud. Admin. 2.085(d)(1)(C).
Upon the obligor's release, any party to the initial support arrangement may bring the original petition for modification to the trial court's attention for resolution. At that time, the trial court shall conduct a hearing on the matter. In reaching a conclusion with regard to the resolution of support matters, the trial court should consider all current facts and equitable factors to determine a realistic plan for the payment of meaningful support, both past and future. The amount of child support which has accumulated after the filing of the incarcerated parent's petition for modification generally should not be reduced. Rather, after the obligor's release from custody, the trial court should structure a schedule of prospective payments that, while possibly less than the payments originally decreed, is designed to enhance the probability that full reimbursement of the underlying amount will occur at some future time. In structuring the payment plan, the trial court should consider the contemporary circumstances of all parties concerned, while ultimately serving the best interests of the child in having all amounts ultimately paid in full if possible. To this end, the trial court should weigh the factors listed in section 61.30(1)(a), the length of the obligor's incarceration, the obligor's present and future employment possibilities, and the total outstanding unpaid amount, as well as any additional considerations touching upon the obligor's attempt, if any, to evade his or her child support obligations.
We reiterate that, in structuring the payment plan, the court must always be directed to designing an order that is in the best interests of the child, both technically and practically. Therefore, any accruals which vested prior to filing the petition to modify remain and clearly must be paid in full. See Shufflebarger v. Shufflebarger, 460 So.2d 982, 985 (Fla. 3d DCA 1984) ("Unpaid child support is a vested right not subject to modification."). Likewise, the total child support amounts which continue to increase after the filing of the obligor parent's petition generally should not be reduced, but may be restructured. Additionally, the court may modify the obligor's current child support obligations, along with adjusting the amount of the obligor's future payments of the unpaid support that has accumulated after the petition to modify was filed. See McArthur v. McArthur, 106 So.2d 73, 76 (Fla. 1958) (holding that orders modifying child support payments that are effective as of the date of filing of the petition to modify, or anytime subsequent thereto, are not retroactive solely because they refer back to the date of filing). It is quite possible that the obligor's payments toward the amounts accumulated after the petition to modify was filed will continue beyond the time that the child support obligations would otherwise naturally terminate, for instance when the child reaches the age of majority. See § 61.13(1)(a), Fla. Stat. (2001). However, because the amount of the accumulated support payments adjudicated in connection with the petition for modification will have become due, the trial court may require the obligor to continue making payments toward his debt. See Friedman v. Friedman, 508 So.2d 781 (Fla. 4th DCA 1987).
The above policy will result in the most equitable and fair outcome for all concerned. Parents have a legal duty to support their children. See § 61.09, Fla. Stat. (2001); see also, e.g., Cronebaugh v. Van Dyke, 415 So.2d 738, 741 (Fla. 5th DCA 1982) ("A minor child has a legal right to *493 support from both parents in keeping with its needs and the parents' ability."). The paramount concern in this situation is to act in the best interests of the supported child. Cf. Overbey v. Overbey, 698 So.2d 811, 814-15 (Fla.1997) (holding that a motion to modify child support centers around a finding of the child's best interest). Undeniably, the child's interests are not served where the obligor parent is unable to fulfill his or her support obligations because there is no income while in prison. Under such circumstances, the child faces the hardship of simply not receiving the money he or she needs, regardless of whether the trial court modifies the incarcerated parent's obligations. After the parent is released, however, the child is in a much better position if there is at least the possibility that not only will current support payments resume, but payment for an accumulated amount will be meteven if under a restructured payment plan. To the contrary, if we permit trial courts to suspend an incarcerated parent's obligation to pay child support, the supported child will never receive the benefit of the support payments to which the child was entitled. Therefore, the child's interests are certainly best served when courts do not modify an obligor parent's child support payments simply because of the parent's incarceration.
Nevertheless, this Court is not unaware of the practical realities facing an obligor parent who is recently released from prison. We recognize that if support payments simply accumulate and become judgments for vested arrearages, the flexibility necessary for attempting to secure actual future payments may be inhibited or entirely lost. Aside from any other debts which may have accrued, the child support arrearages and current support payments may be quite significant. Further, former inmates often experience difficulty in finding meaningful employment. However, such difficulties do not diminish a parent's duty to support his or her child, nor do they outweigh the burdens faced by a minor child who must do without monetary support from the incarcerated parent. Our primary concern is that the child receives the support to which he or she is entitled. Of secondary concern are the parent's difficultieslargely self-inflictedresulting from incarceration due to criminal conduct unrelated to the support obligations. Additionally, our opinion today should not be construed as changing the current law governing the modification of child support payments of parents incarcerated for criminal contempt charges stemming from refusal to fulfill those support payments initially. See Betancourt v. Sanders, 629 So.2d 272 (Fla. 1st DCA 1993) (holding that an order for child support cannot be modified based upon a motion for contempt); Dep't of Health & Rehab. Servs. v. Porbansky, 569 So.2d 815 (Fla. 5th DCA 1990) (same). Nor do we consider all conduct which results in incarceration as being of equal weight in the ultimate equation. Loss of freedom and the capacity to earn due to an attempt to eliminate either a parent or children to avoid support obligations may certainly be considered as a factor weighing against modification.
The ability to craft equitable and realistic payment schedules for obligors upon their release from incarceration does not exist under Justice Harding's preferred resolution of this action. The remedy Justice Harding suggests is illusory and is no remedy at all. Indeed, if arrearages "accumulate and vest as a matter of law" while obligors are incarcerated, as Justice Harding would establish, the sums owed would be irreversibly fixed, thus completely preventing trial courts from fashioning "the appropriate remedy for the payment of arrearage and future support as circumstances *494 require" upon release of the parent from imprisonment. Concurring in part and dissenting in part op. at 501. Therefore, we conclude that the more just approach is to hold the petition to modify in abeyance until a time when a thorough evaluation of the obligor's ability to pay may be conducted, and a farsighted plan for payment may be established.
Secondly, Justice Harding's suggestion that the approach we adopt today in some way burdens the trial court is a hollow argument without substance. We have been presented no basis as to how a trial judge would be burdened by simply permitting a written petition to remain in a court file located in the clerk's office requiring no work or action on the part of anyone and independently we are unaware of any such burden. The filing of a petition requires no logistics or anything from a trial judge until the matter is scheduled for a hearing by the parties. The simple filing of a petition in a court file neither burdens the trial judge, nor does it even implicate logistics.
We believe that the procedures specified herein for permitting the extension of the time for payment of the child support, while the total debt for child support remains undiminished, strike the appropriate balance. It is essential that an obligor parent not be so discouraged by what he or she perceives as an insurmountable child support debt that he or she is tempted to forego paying both past amounts and the current support. Such an abandonment would only result in contempt charges filed against the obligor which could affect his or her credit report, result in additional financial hardship, or cause a return to incarceration. See § 38.23; § 61.14(6)(b)(1)d, (6)(d), Fla. Stat. (2001); see also Russell v. Russell, 559 So.2d 675, 676 (Fla. 3d DCA 1990) (holding that incarceration for civil contempt of court order to pay child support obligations must be based on a finding of the obligor's present ability to pay). The vicious circle of debt and crime must be broken. Therefore, we believe that consideration of all factors and making provision for extending the payment plan for child support amounts over a length of time to be determined by the trial court, even if the payments for past support during minority must continue beyond the child's age of majority, is the proper solution to the practical realities of this case. Our view is most closely aligned with that of the Mascola court, but we provide exceptions and a mechanism that will afford trial courts the ability to address accumulating support obligations without the problems associated with the vesting of interests in the increasing amounts and corresponding judgments.
For the foregoing reasons, we quash the decision of the Fifth District Court of Appeal in Department of Revenue v. Jackson, 780 So.2d 342 (Fla. 5th DCA 2001), and approve the Fourth District's holding in Mascola v. Lusskin, 727 So.2d 328 (Fla. 4th DCA 1999), to the extent that it provides that an incarcerated parent may not automatically have his or her child support payment obligations modified based solely on a reduction in income resulting from incarceration. We reject the per se rule that would permit incarceration to be utilized as a basis to modify support, which would be tantamount to authorizing a suspension or abatement of support obligations in disguise and provide the alternativea flexible procedure designed to encourage and accommodate the payment of support obligations.
It is so ordered.
ANSTEAD, C.J., QUINCE, J., and SHAW, Senior Justice, concur.
*495 WELLS, J., concurs in part and dissents in part with an opinion.
PARIENTE, J., concurs in part and dissents in part with an opinion.
HARDING, Senior Justice, concurs in part and dissents in part with an opinion, in which WELLS, J., concurs.
WELLS, J., concurring in part and dissenting in part.
I concur in the decision to quash the decision from the Fifth District Court of Appeal and approve the decision in Mascola v. Lusskin, 727 So.2d 328 (Fla. 4th DCA 1999).
I do not join in the opinion. I believe that there are adequate procedures presently in place which will allow the circuit court to deal with the issues which are of concern to the majority. However, if the procedures need to be refined to deal with these issues, then specific concerns should be referred to the appropriate rules committee. I am opposed to creating special procedures in this Court's opinions because those procedures are not subject to public comment and often conflict in application with existing rules. I am concerned that this opinion will create many problems in administration.
PARIENTE, J., concurring in part and dissenting in part.
I agree with the majority to the extent that it does not endorse a bright-line rule that a parent's incarceration and inability to earn an income while incarcerated is a per se change of circumstances necessarily requiring a reduction or suspension of a child support obligation. In other words, I agree that there should not be an automatic modification of child support obligations when a parent is incarcerated. However, I dissent in part because I do not endorse a per se rule that always requires a trial court to hold in abeyance a petition to modify while the parent is incarcerated.
I agree with the majority that in cases where the parent is incarcerated for a crime that resulted from the attempt to avoid his or her child support obligation, such as the outrageous circumstances in Mascola v. Lusskin, 727 So.2d 328 (Fla. 4th DCA 1999), neither equity nor our case law would support modifying a child support obligation. Because section 61.14, Florida Statutes (2002),[2] pronounces that equity is considered in any petition to modify, clearly there can be no equity in the reduction of a child support obligation of a parent who is incarcerated for a crime that resulted from the attempt to avoid his or her child support obligation. As the Mascola court stated:
To paraphrase what Judge Pearson said in Waskin v. Waskin, 484 So.2d 1277 (Fla.App. 3d DCA 1986), the clean hands doctrine should surely disabuse a court of equity from relieving a father of his obligation to pay child support where the decrease in his financial ability to pay has been brought about by his voluntary act of attempting to kill the other parent to escape the duty to pay the support. 484 So.2d at 1277. It is especially ironic in this case that reducing support because of the criminal conviction would allow the father to accomplish *496 his very motive for committing his crimeto avoid having to support his children.
727 So.2d at 332. The situation presented in Mascola is very similar to the circumstance where the parent has become voluntarily unemployed in order to avoid a child support obligation and there is no question that the equities will not support a modification of child support. See, e.g., Bokinsky v. Bokinsky, 742 So.2d 809 (Fla. 2d DCA 1999).
However, the facts of the cases currently before the Court are in sharp contrast to the facts of a case such as Mascola, where the specific crime for which the husband was incarcerated, the attempted murder of his wife and unborn twins, was committed for the specific purpose of eliminating his child support payment. See Mascola, 727 So.2d at 329 n. 2. In Department of Revenue v. Jackson, 780 So.2d 342 (Fla. 5th DCA 2001), Jackson had been ordered to pay child support for his daughter. See id. at 342. His weekly obligation was $32.25, which was later increased to $58.24 per week due to an arrearage. He was "later incarcerated for dealing in stolen property and for drug possession, and he filed a motion to abate child support during his incarceration." Id. Jackson's sentence was imposed in May 1998 and his present release date is June 2003.
At the hearing on his motion to modify, Jackson testified that "all of the crimes that was [sic] committed was because of a drug addiction ... because I was a drug addict and, therefore, the crime was committed by me." Accordingly, unlike Mascola, it does not appear that Jackson committed the crime for which he was incarcerated in order to avoid child support. The trial court entered an order abating child support, which specifically stated:
While the Defendant is incarcerated, he shall have no obligation to pay child support since he has no present ability to pay support and the imputation of income for child support purposes would be improper.... Upon the Defendant being released from incarceration and/or obtaining employment through a work release program, the Plaintiff retains the right to reestablish child support obligations of the Defendant and also pursue child support arrearages, if any, by all lawful means.
Presumably, because the trial court abated the child support payments during incarceration, the ability to pursue arrearages refers to previously unpaid child support. Without the abatement of child support payments and presuming the $58.24 per week amount and a sixty-month (five-year) incarceration, Jackson's arrearages during incarceration will total an additional $3,494.40.
In the consolidated case of Tillery, the record does not identify the crime that led to Tillery's incarceration, but does reflect that he was sentenced to 37.5 months' imprisonment. At the time Tillery filed his petition to abate, his child support obligation was $82 weekly and he was already in arrears for $15,501.59. Therefore, without abatement of the obligation while Tillery is incarcerated, he will be in arrears an additional $12,300, making his total arrearages $27,801.59.
In the recent case of Holt v. Geter, 809 So.2d 68 (Fla. 1st DCA 2002), the First District adopted a bright-line rule that child support should never be abated during incarceration. Although the First District agreed with the Fourth District's reasoning in Mascola, there is nothing in the First District's opinion indicating that Holt's crime was related to an attempt to avoid his obligation to pay child support. The facts as alleged by Holt in his petition for modification indicate that he is serving a 72-month sentence received on June 20, *497 2000, that he did fully support his son from the time of his birth until 1999, and that he was remorseful that he could not continue to do so. Specifically, Holt stated:
Respondent would like noted that he is remorseful for being in the situation that he is in and not being able to fully support his son. Respondent did in fact fully support his son up until he was unable to due to his incarceration and has full plans of continuing this support after he is released back into society. [R]espondent is also remorseful that is is [sic] not present to be the father that his son will need in this very impressionable time of his life, respondent understands that no amount of support can take the place of his physical and mental support that a Father can give to his son.
As of November 2000, Holt had a total arrearage of $6200 and was ordered to pay $172 per month, even while incarcerated. Thus, by the time he is released in 2006, Holt's arrearage will total more than $17,000.
When a parent like Jackson, Tillery, or Holt is incarcerated, and the underlying crime was not committed for the purpose of avoiding child support, the two polar views are that child support should never be modified because the criminal behavior that led to the incarceration was voluntary, or that child support should always be modified because incarceration is a change of circumstance leading to reduction in the ability to earn income. However, in my opinion a third view is that incarceration is simply one factor to consider when determining whether to grant a modification of child support.
The undeniable fact is that incarceration leads to a dramatic change of circumstances and financial ability. Thus, except for the cases where a parent is incarcerated for a conviction that resulted from an attempt to avoid the child support obligation, a trial judge should not be prohibited from either considering or even granting a petition to modify based solely on the fact of incarceration at the time the petition is filed. Thus, in those cases, I depart from the majority opinion's unbending rule of law that requires the trial court to hold a petition to modify in abeyance until the period of incarceration is over. See majority op. at 491. I see no reason to remove all discretion from the trial court to consider a petition to modify where there has been an undeniable change of circumstances due to a parent's incarceration.
In those cases in which the crime for which the parent is incarcerated is not related to an attempt to avoid child support, the trial court should be able to exercise its discretion. Some of the factors the trial court should apply when exercising that discretion include:
(1) the length of incarceration experienced for the current conviction and the anticipated remaining period of incarceration, (2) the earning potential of the incarcerated parent following release, (3) the amount of the existing child support award, and (4) the total amount of child support that will accumulate upon the incarcerated parent's discharge.
Oberg v. Oberg, 869 S.W.2d 235, 238 (Mo. Ct.App.1993). See also In re Marriage of Hamilton, 857 P.2d 542, 544 (Colo.Ct.App. 1993) (finding that in addition to obligor's incarceration, the court must consider "the intentional nature of the crime, financial circumstances, likelihood of future income, and any possible intention to evade the support obligation"); Thomasson v. Johnson, 120 N.M. 512, 903 P.2d 254, 257-58 (Ct.App.1995) (holding that incarceration alone does not demonstrate an inability to pay support and that other factors including whether the parent has other assets or sources of income, the ability of the parent *498 to earn income in the past and future, the length of the incarceration, the best interest of the child, and the unclean hands doctrine can all be considered in deciding whether modification is warranted). As the Oberg court stated:
The requirement to pay child support is not punitive but is an obligation imposed by parenthood to satisfy the needs of the parent's child as completely as the parent's circumstances reasonably permit. The courts must, therefore, exercise considerable discretion in this type of case just as they must in all cases in which the financial obligation of a parent to satisfy the needs of the parent's child is at issue.
869 S.W.2d at 238.
In dissenting from the majority's procedure, I am in no way minimizing the fact that it is the parent's criminal behavior that led to the parent's incarceration and inability to pay support. The reality is that by committing the crime, that parent has deprived the child of financial support as well as the parent's involvement in the child's life. The parent's incarceration, however, was the punishment for the parent's conduct imposed in a separate criminal proceeding. The fact of that incarceration should not be the sole basis for denying modification of child support in a civil proceeding. Instead, the court should look to the general principles governing child support modification.
Because "proceedings under chapter 61 are in equity and governed by basic rules of fairness as opposed to the strict rule of law," Rosen v. Rosen, 696 So.2d 697, 700 (Fla.1997), the clean hands doctrine may bar the downward modification of child support in those cases, like Mascola, where there was a finding that the parent's incarceration resulted from a crime that was committed in an attempt to avoid child support. See 727 So.2d at 333. This approach is consistent with equitable rules barring profit from wrongdoing. However, sound public policy militates against a categorical rule preventing the trial courts from considering petitions to modify filed by incarcerated parents on a case by case basis. There is no reason to require the trial courts to treat parents who become incarcerated after the initial child support award any differently than other parents who face a change in circumstances.
The Department of Revenue (DOR), which is the appellant in both of these actions, acknowledges that if the initial child support obligation is established at the time that the parent is incarcerated, then it would be error to impute income to that parent without showing an independent source of income. As the Second District in Waugh v. Waugh, 679 So.2d 1 (Fla. 2d DCA 1996), observed in reversing a child support order based on the amount that the father was earning prior to incarceration:
"A court may impute income to a party who has no income or is earning less than is available to him based upon a showing that the party has the capability to earn more by the use of his best efforts." Here, there was no showing that the husband had the capability while he was in prison to earn the amount imputed to him.
679 So.2d at 3 (citation omitted).
The DOR also agrees that after the parent is released from prison, a modification of future child support obligations may be appropriate. Further, the DOR acknowledges that where the parent, rather than being incarcerated for his or her criminal conduct, was placed on probation and thereafter suffered a reduction in earnings, a downward modification of the child support obligation would be appropriate. Regardless of whether the parent is *499 incarcerated or on probation, it is the underlying criminal behavior that led to the ensuing reduction in income. I see no reason why a judge should be prevented from considering a petition to modify for a parent who is incarcerated when the trial judge would have discretion to consider the petition to modify if the parent were placed on probation for the same criminal behavior.
Similarly, a trial court has the discretion to modify child support payments if a parent's income is reduced because the parent lost hospital privileges necessary to practice his or her profession due to alcoholism or a drug addiction. See Haas v. Haas, 552 So.2d 252, 254 (Fla. 4th DCA 1989) (husband's loss of hospital privileges due to his alcoholism constituted sufficient change of circumstances to warrant reduction of alimony). Thus, I see no reason why we should prevent judges from considering petitions to modify filed by parents who are incarcerated for crime resulting from alcohol or drug addiction. The underlying issue is whether there has been a loss of the ability to earn income so that in fact the parent is unable to meet his or her present child support obligation. In response to Justice Harding's opinion concurring in part and dissenting in part, I do not agree that we should in all cases equate a loss of employment due to incarceration with cases where the parent becomes voluntarily unemployed to avoid child support.
Consider these hypotheticals. If a person drives while intoxicated, becomes involved in an accident, receives injuries and as a result loses the ability to earn an income, the trial court may reduce the child support obligation based upon that loss of income. Similarly, if the person drives while intoxicated, becomes involved in an accident, is charged with DUI manslaughter, is sentenced to probation, and as a result loses the ability to earn an income, the trial court may reduce the child support obligation based upon that loss of income. However, if the person drives while intoxicated, becomes involved in an accident, is charged with DUI manslaughter, is sentenced to prison, and as a result loses the ability to earn an income, under the majority opinion the trial court will not be able to consider a reduction of the child support obligation based upon that loss of income until after the person is released from prison. I see no basis in the law for distinguishing the third example from the first two or for necessarily equating something like voluntary intoxication or incarcerationwith voluntary unemployment.
Although I believe that the trial judge should have the discretion to grant a petition to modify a child support obligation at the time it is filed by the incarcerated parentunless the crime for which the parent is incarcerated is related to an attempt to avoid child supportI am not opposed to also giving the trial judge discretion to defer the petition to modify and to follow the procedures set forth by the majority. Factors that the trial court might consider in deciding whether to defer the petition include the length of the parent's incarceration, the anticipated remaining period of incarceration, the earning potential of the parent following release, and the obligor's prior record of timely payments. However, I also agree with Justice Wells that the matter should be referred to the appropriate rules committee to recommend how the deferral procedure should be implemented and to recommend factors for the trial courts to consider in deciding whether to grant the petition to modify or to hold it in abeyance.
Accordingly, although the majority is on the right track in its approach, in my view the majority goes too far in mandating *500 that the trial court hold a petition to modify in abeyance in all cases of incarceration. I am unpersuaded that a per se rule that never allows for modification or that always requires deferral until incarceration is completed will actually benefit the child whose best interests we profess to protect, especially if the amount of the monthly child support obligation is significant and the incarceration lengthy. I would thus leave the matter in the trial court's discretion guided by the principles enunciated in this opinion.
The State asserts that it wants to act in the best interests of the child; however, as these cases make apparent, incarcerating a parent who has a child and who has a child support obligation usually does not serve the best interests of the child. Although there are many cases where incarceration is necessary, the reality that we must face as a society is that incarceration makes it difficult if not impossible for a parent to support his or her child either physically or emotionally, and places a greater burden on the State to provide the unpaid support. Thus, with the increasing length of sentences and the increasing numbers of parents incarcerated,[3] the fact that incarceration adversely affects a parent's ability to support a child both materially and emotionally, and the societal fallout from that failure, are factors that must be seriously considered when looking at alternative punishments for certain offenses. See State v. VanBebber, 805 So.2d 918 (Fla. 2d DCA 2001) (Altenbernd, Acting C.J., concurring) (writing separately "to encourage the legislature to consider authorizing more discretion for trial courts to impose adequate alternative punishments for DUI manslaughter"), review granted, 819 So.2d 139 (Fla.2002).
Alternatives to incarceration could embrace a balanced and restorative approach to criminal justice.[4] This approach requires the offender to be held accountable for his or her criminal actions by recognizing the harm done, including indirectly to his or her child, and by imposing a solution that would enable the offender to seek to repair the harm resulting from his or her criminal behavior, including the continued payment of child support. However, given that there are no such options available at this time, I would afford the trial courts as much discretion as possible in deciding when and whether a petition to modify should be granted.
In conclusion, I would quash the Fifth District's decision in Jackson to the extent it provides that a parent's incarceration is a change of circumstances that automatically *501 requires a reduction or suspension of a child support obligation. Neither do I approve a bright-line rule, such as the one suggested by Justice Harding, that would require the trial court to deny the petition to modify without considering the fact of incarceration. I would provide the trial court with discretion to consider the petition to modify at the time the petition is filed so long as the underlying crime did not result from an attempt by the parent to avoid child support as in Mascola. I would further provide the trial court with discretion to defer consideration of the petition to modify based on the procedures outlined in the majority opinion. However, I do not agree with the majority that all discretion to grant the petition to modify at the time it is filed should be eliminated. I would thus quash the opinion in Jackson and remand for reconsideration of Jackson's petition by the trial court.
HARDING, Senior Justice, concurring in part and dissenting in part.
I appreciate the majority's effort to resolve a complex "human problem," majority op. at 490, regarding the often large arrearage accumulated while one required to pay child support is incarcerated. However, contrary to the majority, I would resolve the competing policy interests involved by following the reasoning of the Ohio Sixth District Court of Appeals in Cole v. Cole, 70 Ohio App.3d 188, 590 N.E.2d 862, 866 (1990). There, the court reasoned that
[the incarcerated parent] could and should be treated as any other noncustodial parent liable for any money owed on his child support obligation. [The parent's] inability to pay arose from circumstances which he could have reasonably anticipated. There are no guaranties of probation or other forms of disposition when convicted of a criminal offense. It is not "state action" which reduced his income, but his own willful acts. Thus, we find that incarceration, standing alone, does not warrant a finding of change of circumstances.
Thus, while one is incarcerated and does not pay support, I would allow any arrearage to accumulate and vest as a matter of law. After the obligor is released from incarceration, the trial court can fashion the appropriate remedy for the payment of arrearage and future support as the circumstances require. If payment on the arrearage cannot be made, the arrearage can be reduced to judgment. I find that this resolution brings more certainty and consistency than the New Jersey resolution of the issue, which the majority adopts, and more appropriately recognizes the benefit that should belong to the child rather than to the incarcerated parent.
Additionally, I am concerned that the procedure adopted by the majority will place an additional burden on already burdened trial judges and administrators. The logistics of managing a trial calendar with petitions filed by obligors who are incarcerated and who cannot be present for a hearing for a number of years will be difficult. A rule which would allow the arrearage to accumulate and vest as a matter of law while the obligor is incarcerated and permit the trial court, upon the obligor's release, to fashion the appropriate remedy under the circumstances existing at that time appears to me to be a more workable and practical rule for all concerned.
WELLS, J., concurs.
NOTES
[1] We specifically note, however, that where an incarcerated obligor owns assets or otherwise has the financial ability to pay at the time he or she files the petition to modify his or her support obligations, trial judges may reduce child support arrearages to judgments to provide that the support obligations may be satisfied from these assets.
[2] Section 61.14(1)(a), provides in pertinent part:

Except as otherwise provided in s. 61.30(11)(c), the court may modify an order of support, maintenance, or alimony by increasing or decreasing the support, maintenance, or alimony retroactively to the date of the filing of the action or supplemental action for modification as equity requires, giving due regard to the changed circumstances or the financial ability of the parties or the child.
(Emphasis supplied.)
[3] In August 2000, the U.S. Department of Justice, Bureau of Justice Statistics reported that in 1999 there were an estimated 667,900 fathers and 53,600 mothers of minor children in state and federal prisons. See Christopher J. Mumola, U.S. Dep't of Justice, Incarcerated Parents and Their Children 2 (2000). Further, an estimated 1.5 million children had a parent in prison in 1999, an increase of more than 500,000 since 1991. See id.
[4] A balanced and restorative justice approach views crime as "more than a violation of the criminal law" but also as a disruption "in a three-dimensional relationship of victim, community and offender." See Leena Kurki, U.S. Department of Justice, Incorporating Restorative and Community Justice Into American Sentencing and Corrections 2 (1999). It further recognizes that because crime "harms the victim and the community, the primary goals should be to repair the harm and heal the victim and the community." Id. The goal of any case disposition should be to promote public safety, competency development and accountability. Further, sentencing that has been based on restorative justice principles has shown higher rates of compliance with payment of restitution amounts and in completion of community service. See generally Gordon Bazemore, A Vision for Community Juvenile Justice, Juv. & Fam. Ct. J., Fall 1998, at 55.