937 So.2d 171 (2006)
Angeline ALOIS, Appellant,
v.
Daniel T. ALOIS, Jr., Appellee.
No. 4D05-1964.
District Court of Appeal of Florida, Fourth District.
August 9, 2006.
Rehearing Denied October 4, 2006.
Douglas R. Bell, Fort Lauderdale, for appellant.
John H. Pelzer and Robyn L. Vines of Ruden, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, for appellee.
*172 TAYLOR, J.
Angeline Alois (former wife) appeals a post-decretal order requiring her to pay child support of $786 per month, plus a share of the children's medical expenses and private school tuition. The order also calculated an arrearage which accumulated during the proceedings below. The former wife contends that the trial court failed to properly consider the overall financial situation of the parties in awarding child support and calculated the arrearage from an incorrect starting date. She asserts that she is unable to pay the amount of child support ordered by the court and still maintain any reasonable standard of living. Based on our review of the record, we agree with the former wife's position on all points and reverse and remand this cause with directions to reduce her child support obligation to $200 per month, recalculate the arrearage, and establish different payment terms for the arrearage.
*173 Daniel T. Alois, Jr. (former husband) and the former wife were married on August 31, 1985. They have three children, Amanda (now age 18, who presumably graduated from high school in June 2006), Danielle (now 15), and Danny (now 12). The parties divorced in May 2001, making this a fifteen-year marriage.
The former husband is a firefighter for the City of Oakland Park. The former wife is a job cost bookkeeper. The former husband's gross income is $79,000. The former wife's gross income is $34,587.
The 2001 dissolution decree incorporated the parties' mediation agreement. The parties agreed to a "hyper-rotating" custody of the children on a schedule to accommodate the former husband's work hours, such that the children were changing houses every 24-48 hours. The former husband agreed to pay the former wife $600 a month in child support and to pay the children's private school tuition through grade eight (then $500 a month) and all of the children's uncovered medical expenses. The former wife received no alimony.
Within two years after the divorce, the former husband remarried and the former wife purchased a house with her paramour, Glenn Gallowitz. The latter event caused a strain between the former wife and her oldest daughter, Amanda, who essentially stopped coming to her mother's house. On May 15, 2003, Gallowitz hit the former wife and pushed her into a wall in front of Danielle and Danny. Gallowitz called the former husband to come pick up the children because of what had happened. From this point forward, the former husband had de facto primary custody of all three children. The two daughters have had only minimal visitation with the former wife, but Danny has maintained a standard visitation schedule with his mother.
Four days after the May 15 incident, the former husband filed a motion to modify child custody, seeking primary residential custody. In his motion he did not address child support. On June 23, 2003, the parties entered into an agreed temporary order, which stated that until September 1, 2003, the former husband would be declared primary custodian of the children, that the former wife would have visitation, and that the former wife would refund half of the $600 a month in child support which she was still receiving by income deduction order.
On December 12, 2003, the former husband filed a motion for refund of the child support he had paid after August 2003 and was continuing to pay. The motion did not request that the former wife pay any child support to him.
On February 26, 2004, the former husband filed a pleading titled "Father's Supplemental Petition for Modification of Final Judgment: To-Wit: Primary Residence, Timesharing and Child Support." In that pleading, the former husband requested that, among other things, the trial court "adjust the child support obligations, commensurate with Florida's Child Support Guidelines, taking into consideration the children's private school tuition and the substantial timesharing he enjoys with his children . . . ."
The former husband has a monthly gross income of $6,583 and a net income of $4,767. Even though his current wife is a police officer, the former husband claims to pay all of the household expenses from his income alone. His mortgage is $959 and his car payment is $370.34 a month. According to the former husband, he spends $1,802 per month on the children, including $680 a month in private school tuition. He claims a total monthly deficit of $1,145.84.
*174 The former husband stated in his affidavit that his home is worth $180,000. At trial he stipulated that the tax appraisal on the home is $194,000. He testified that he does not know the home's actual value. He drives an $18,000 Dodge Ram and owns a 1984 Chevy Cavalier that is driven by Amanda. He testified that he paid $2,000 for the Cavalier and recently spent $2,000 to repair it; he lists it as only an $800 asset. He has $10,000 in a retirement plan. The two mortgages on his home total $94,757, leaving him a total net worth of at least $94,843 (mostly home equity, which exceeds $85,000).
The former husband testified that Danny's tuition is $360 per month, his books are $400 annually, and his registration is $200 annually. The former husband must also donate $450 a year to the church to get a parishioner discount. He must also buy uniforms. The monthly tuition for Amanda and Danielle is $200 apiece; annual registration for each is $100; uniforms are $400 a year for both, and supplies amount to $300 a year. He also pays $800 a year for his daughters' cheerleading activities.
The former husband testified that he pays between $60 and $100 a month for Amanda's gasoline and $100 for her car insurance. As mentioned above, he recently paid $2,000 to repair her car. He spends $100 a month on cell phones for the two girls, and $120 a month for their lunch money. He said he spends $500 a month on children's entertainment and $80 a month for other children's birthday presents. He also testified to spending $10 a month on eyeglasses, $50 a month on cosmetics and toiletries, $40 a month on the children's grooming expenses, and $174 a month on Daniel's braces. Both parents want the children to stay in their current private, parochial schools. The cost will be $650 per child.
The former wife's monthly gross income is $2,882, and her net income is $2,325.22. The former wife's financial affidavit is starkly different from the former husband's, except that she also claims a deficit of $1,619.32 per month. Her expenses can be divided into two categories: "hard expenses," over which she has little control, and "soft expenses," which she may be able to reduce or eliminate altogether. The hard expenses are:
$915.70Half of mortgage payment
$52.50Half of the homeowner's association fee
$40.00Half of the water, garbage, sewer
$100Half of the electricity
$380.00Car payment
$100Gasoline
$100Insurance
$200Food
$20Grooming
Her hard expenses total $1,908.20. Payment of these expenses leaves her less than $420 per month for softer expenses, which include telephone, home and car repairs, pest control, meals outside the home, cable television, entertainment, dry cleaning/laundry, clothing, medical/dental/prescriptions, cosmetics and toiletries, gifts, pet food, vacations, credit card debt, and life insurance.
The former wife's main asset is the home she jointly purchased with Gallowitz. The home is valued at $335,000, with a $224,225 mortgage. Because the home is jointly owned, it cannot be re-financed without Gallowitz's cooperation. The former husband has not requested that the former wife be forced to partition this home. The former wife drives a 2002 Dodge Stratus worth $14,000. Her pension plan is worth $1,200.
*175 On February 15, 2005, the magistrate issued her report. She determined that the former husband should be the primary residential parent of all three children, but that the former wife should have substantial time-sharing with Danny. The magistrate ruled that she had jurisdiction to award child support retroactive to the date of the initial petition requesting a change in child custody, but awarded retroactive support as of the date of expiration of the parties' temporary agreement, September 1, 2003. She also ruled that the former wife must refund the $7,800 in child support she had received since that date.
The magistrate determined the children's total need for basic child support under the guidelines as $2,506.26 per month. The mother's share was 33%, yielding a guideline support amount of $827. The court applied a 5% reduction, for a total child support amount of $786 for the time prior to commencement of Danny's substantial time-sharing (i.e., the retroactive period prior to December 1, 2004). The court ordered that the wife continue to pay this amount after December 1, 2004, even though her child support obligation dropped to $505 per month at that point. The higher payment was to continue in order to pay arrearages and (beginning in September 2005) to pay $150 a month toward the children's private school. The child support portion of the monthly payment is to drop to $325 per month upon Amanda's graduation from high school, commencing June 1, 2006. Nonetheless, the payment will remain at $786 per month for the foreseeable future, based on the $150 private school tuition contribution and the arrearage.
The magistrate calculated that in addition to the $7,800 refund of the former husband's child support payments, the former wife owed $11,790 in retroactive child support (less a credit for $800 she expended on the children during this time frame). Thus, the former wife's total arrearage was calculated to be $18,790.
With respect to private school, the magistrate found that it had been the family practice to have the children in private school and continue such schooling beyond the eighth grade. She felt it was possible to meet the private school costs within the "family budget." She required the former wife to pay $150 per month toward that schooling, commencing with the 2005/2006 school year, plus half of each child's annual registration fee.
The magistrate also made the former wife responsible for 33% of the children's uncovered medical expenses, including reimbursement for one-third of Danny's orthodontic treatment. This obligation was in addition to child support.
The former wife objected to the magistrate's report. In ruling on the exceptions, the circuit court did not hear any evidence and simply commented that, "the child support was determined by the net income of both parties, not the expenses." The circuit court approved the report on April 7, 2005.
The abuse of discretion standard of review applies to trial court orders in modification of child support proceedings. Woolf v. Woolf, 901 So.2d 905, 911 (Fla. 4th DCA 2005).
Parents have a legal duty to provide financial support for their children. Dep't of Revenue v. Jackson, 846 So.2d 486, 492 (Fla.2003). However, proceedings under chapter 61 are equitable in nature and thus are governed by basic rules of fairness. Camus v. Prokosch, 882 So.2d 428, 430 (Fla. 1st DCA 2004). One of the most basic rules of fairness is that a court cannot order a parent to pay child support which that parent cannot afford to pay.
*176 As Florida Statute section 61.14(5)(a) states:
When a court of competent jurisdiction enters an order for the payment of alimony or child support or both, the court shall make a finding of the obligor's imputed or actual present ability to comply with the order.
Here, no such finding was made. Further, on this record, we believe no such finding could have been made.
Section 61.13, Florida Statutes, states that "the court may at any time order either or both parents who owe a duty of support to a child to pay support in accordance with the guidelines in s. 61.30." That section, in turn, states that the child support guideline amount "presumptively" establishes the amount the trier of fact shall order as child support. § 61.30(1)(a), Fla. Stat. (2005).
Subsection 61.30(11)(a) states that the court "may adjust the minimum child support award, or either or both parents share of the minimum child support award," based upon several different considerations, including, "[a]ny other adjustment which is needed to achieve an equitable result which may include, but not be limited to, a reasonable and necessary existing expense or debt." § 61.30(11)(a)11., Fla. Stat. (2005). This latter provision is necessary in some cases to avoid conflict with the rule of fairness that prohibits ordering a parent to pay child support which he or she cannot afford to pay. See Jackson, 846 So.2d at 490 ("Trial court is vested with discretion to vary the support amount after considering all relevant factors, including, but not limited to . . . the financial status and ability of each parent."); see also Finley v. Scott, 707 So.2d 1112, 1117 (Fla.1998) ("The court is then to evaluate from the record the statutory criteria of ... the financial status and ability of each parent . . .").
In Ballesteros v. Ballesteros, 819 So.2d 902, 903 (Fla. 4th DCA 2002), the former husband had a net monthly income of $1,758.08. The trial court awarded combined alimony and child support in excess of $1,000, leaving the former husband just $695.67 on which to live. We reversed, stating:
Although the parties are of modest means, the alimony award, combined with the child support award and health insurance for the minor child, left former husband without the means to support himself, such that no reasonable man could differ as to the impropriety of the court's award.
Id.
In Radziwon v. Radziwon, 710 So.2d 748 (Fla. 4th DCA 1998), the court ordered the payment of $866 a month in alimony and $200 a month in arrears, leaving former husband with only $709 a month to support himself. We stated:
Appellant's monthly expenses for basic necessities such as food, housing, utilities and transportation amount to a minimum of $1,168.00 a month. Since it is apparent that appellant cannot support himself after paying $866.00 a month in alimony and $200.00 a month in arrears, we hold that the trial court abused its discretion in modifying the alimony award.
Id. at 748.
In Thomas v. Thomas, 418 So.2d 316 (Fla. 4th DCA 1982), the former husband made $2,065.22 per month. We stated:
Appellant contends the trial court abused its discretion in awarding appellee $1,200 per month, or fifty-eight percent of his net income, in alimony and child support. We agree and are compelled to reduce the child support $50 per month per child in order to secure appellant's economic survival. After the *177 reduction, he is left, after payment of his rent and the loan upon his automobile, with $330 per month to pay his other necessities.
Id. at 316; see also Moss v. Moss, 636 So.2d 164, 165 (Fla. 4th DCA 1994) (reversing a guidelines child support award where it left the former husband only $380 per month on which to live, while noting that "the trial court has the discretion to deviate from the statutory guidelines after considering a parent's overall financial circumstances and impose an obligation upon a parent within his ability to pay").
The common theme throughout the above cases is that the court should consider the non-custodial parent's "basic necessities such as food, housing, utilities and transportation," along with the parent's net income and support obligation, to determine if the parent can economically survive. In this case, we have carefully examined the record, including the former wife's financial affidavit, which shows that she has $1,908.20 in reasonable, fixed costs (such as her mortgage and car payment) per month. With a net income of $2,325.22, it is apparent that she cannot economically survive the current $786 monthly payment (and additional $57.42 orthodontist expense) on her recurring income. This is true even if she eliminates any expenses for a cell phone, cable television service, pet, clothing, entertainment, or vacations.
As the former husband points out, the $786 child support payment is just 34% of the former wife's net income. Indeed, this is a lower percentage than that of the noncustodial parent's income in the above cases. Thomas is probably closest at 58%. The statute specifically permits an adjustment to the guideline amount in cases exceeding 55% of gross income. See § 61.30(11)(a)9, Fla. Stat. (2005). However, the former wife is not arguing that this support amount is per se excessive in its percentage. Rather, she asserts that, based on her particular circumstances, she lacks the ability to pay 34% of her modest income and take care of her basic needs for survival.
In Casella v. Casella, 569 So.2d 848, 849 (Fla. 4th DCA 1990), we stated:
. . . this is not to say that an award amounting to any particular percentage of a party's income forms a bright-line rule resulting in a finding of an excessive award and an abuse of discretion. Each case's resolution must rest on its individual facts.
The former wife also contends that she cannot afford to pay uncovered medical expenses or private school tuition. The court ordered the former wife to pay $150 a month toward private school, commencing with the 2005/2006 school year, plus half of the annual registration fees. Despite the parties' tradition of sending their children to private school, the issue is how much, if anything, the non-custodial parent can afford to spend on private school. See Pollow v. Pollow, 712 So.2d 1235, 1236 (Fla. 4th DCA 1998) ("Private educational expenses may be awarded only where the non-custodial parent has the ability to pay for that private school."); Todesco v. Todesco, 583 So.2d 774, 775 (Fla. 4th DCA 1991) (same). Here, the record reveals that the non-custodial parent has no ability to pay anything toward private school.
In sum, the trial court abused its discretion in awarding the former husband child support in the amount of $786 per month and requiring the former wife to pay a portion of the children's uncovered medical expenses and private school tuition. We therefore reverse the post-judgment order. To secure the former wife's economic survival, we are compelled to cap the former wife's total responsibility for child support at $200 per month, with no additional liability *178 for the children's uncovered medical expenses or private school tuition. This reduced amount must be used in recalculating the arrearage. The arrearage payments should be paid at the $200 rate, commencing upon Danielle's graduation from high school (at which point the former wife's child support obligation presumably will end).
The former wife also challenges the starting date used by the trial court in determining retroactive child support. We agree that the trial court erred in awarding the former husband six months of retroactive support, from September 2003 through February 2004. See Bardol v. Martin, 763 So.2d 1119, 1119 (Fla. 4th DCA 1999) ("Regarding dissolution, courts generally have only awarded retroactive child support back to the date the petition for support or modification of existing support was filed."); Waite v. Kennedy, 724 So.2d 572 (Fla. 3d DCA 1998) (holding that trial court erred in granting retroactive child support prior to date of filing of counter-petition seeking that relief); Anderson v. Anderson, 609 So.2d 87, 88 (Fla. 1st DCA 1992) (holding that it was error to award child support retroactive to a date prior to a request for modification of an order which previously addressed child support); Berger v. Berger, 559 So.2d 737, 738 (Fla. 5th DCA 1990) (remanding for trial court to adjust child support to reflect that it is retroactive to the date of filing the petition for modification); see also Owens v. Eshelman, 712 So.2d 472, 473 (Fla. 1st DCA 1998) (holding that court could not enter child support award where it was not requested in petition for custody); Torres v. Torres, 739 So.2d 599, 600 (Fla. 2d DCA 1997) ("It is settled that a trial court cannot modify a child support obligation absent a pleading or motion requesting such modification.").
We reverse and remand for recalculation of the arrearage, using the appropriate starting date and the $200 monthly child support amount.
Reversed and Remanded.
KLEIN and SHAHOOD, JJ., concur.