IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

DEPARTMENT OF REVENUE,

     Appellant,

v.

JUAN LLAMAS and JENNIFER
DUQUE,

     Appellees.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-2660

Opinion filed August 4, 2016.

An appeal from an order of the Department of Revenue.

Pamela Jo Bondi, Attorney General, and Toni C. Bernstein, Assistant Attorney General, Tallahassee, for Appellant.

No appearance for Appellees.

WINOKUR, J.

     This appeal from a Final Administrative Support Order addresses the child support obligations of a prisoner. The Administrative Law Judge (ALJ) declined to award current child support because the father was going to prison shortly after the

hearing and, therefore, lacked present ability to pay support. The Department of Revenue (DOR) urges this Court to reverse the support order and adopt the holding of McCall v. Martin, 34 So. 3d 121 (Fla. 4th DCA 2010), which found that the trial court erred in refusing to set an initial award for child support under similar circumstances. Because we find that the controlling statutes and Florida Supreme Court precedent do not permit imputation of income for child-support purposes in these circumstances, we decline to follow McCall, certify conflict with McCall, and affirm the Order below.

## I.

DOR filed a proposed administrative support order requiring the father to pay $840.63 per month in child support, plus past support. The father requested review, and a hearing was set before the Division of Administrative Hearings. At the hearing, the ALJ learned that the father would be entering a plea agreement resulting in two years incarceration for vehicular manslaughter. DOR argued that at least minimum wage should be imputed to the father while incarcerated, for purposes of setting a support amount. The ALJ distinguished cases imputing income to an incarcerated parent when the incarcerated parent had committed domestic abuse. The ALJ found that the father lacked the present ability to pay current child support, declined to impute income to the father, and declined to set an initial award of child support.

## II.

Section 61.30, Florida Statutes, sets child-support guidelines and other rules for determining a child-support obligation. In determining a parent's income for this purpose, income can be imputed to an unemployed parent "if such unemployment . . . is found by the court to be voluntary on that parent's part . . . ." § 61.30(2)(b), Fla. Stat. In determining how much income to impute to a voluntarily unemployed parent, "the employment potential and probable earnings level of the parent shall be determined based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community if such information is available." Id. "A court may impute income to a party who has no income or is earning less than is available to him based upon a showing that the party has the capability to earn more by the use of his best efforts." Koeppel v. Holyszko, 643 So. 2d 72, 75 (Fla. 2d DCA 1994). The trial court's decision regarding imputation of income for purposes of calculating child-support obligations is reviewed for abuse of discretion. Strassner v. Strassner, 982 So. 2d 1224, 1225 (Fla. 1st DCA 2008).

A court may modify a child-support obligation if there is a "substantial change in the circumstances of the parties." § 61.13(1)(a)2., Fla. Stat.; see also § 61.14(1)(a), Fla. Stat. (permitting court to order decrease or increase in the amount of support "as equity requires, with due regard to the changed

3

circumstances or the financial ability of the parties"). Although this case does not involve modification of a support order, modification is relevant to the issues herein.

III.

In Waugh v. Waugh, 679 So. 2d 1 (Fla. 2d DCA 1996), the Second District reversed an initial child-support order entered against a parent while he was incarcerated. The Second District noted that "there was no showing that the husband had the capability while he was in prison to earn the amount imputed to him." Id. at 3.

The Fifth District applied the principle of Waugh to a case where the prisoner sought a modification of a previously imposed support order in Pickett v. Pickett, 709 So. 2d 182 (Fla. 5th DCA 1998), rejecting the imputation of income to a parent who was scheduled to begin a prison sentence shortly after the modification hearing. However, the Fourth District rejected Pickett in Mascola v. Lusskin, 727 So. 2d 328 (Fla. 4th DCA 1999), holding that commission of a crime is a "voluntary act" resulting in unemployment (i.e., incarceration). Moreover, the particular crime committed by the incarcerated parent (soliciting the murder of his girlfriend after she became pregnant to avoid any support obligation) demanded application of the "clean hands doctrine" to ensure that the incarcerated parent did not benefit from his criminal activity. Id. at 332. As such, the Fourth District

4

concluded that support payments should not be modified in spite of the imprisonment. Id. at 333.

The Supreme Court resolved the conflict between the Fourth and Fifth District in Department of Revenue v. Jackson, 846 So. 2d 486 (Fla. 2003). The Supreme Court rejected the Pickett rule that support must be modified because the incarcerated parent had no ability to pay. Id. at 494. While the Court held that it approved Mascola, it only did so "to the extent that it provides that an incarcerated parent may not automatically have his or her child support payment obligations modified based solely on a reduction in income resulting from incarceration." Id. Rather than adopt either the Pickett or the Mascola approach, the Supreme Court implemented a procedure to allow the parent seeking modification of a support award due to incarceration to file a petition to modify, requiring the trial court to place the petition in abeyance until the obligor parent's release. Id. at 491. Once the parent is released from incarceration, the trial court would hear the modification petition, taking into account numerous factors, including "any additional considerations touching upon the obligor's attempt, if any, to evade his or her child support obligations." Id. at 492.

The point of Jackson was clearly to address modification of a previously ordered child-support obligation when the obligor becomes incarcerated. Jackson resolved this issue by creating a process that explicitly addresses modification of a

support order. The <u>Jackson</u> opinion mentioned <u>Waugh</u>—involving an initial support order rather than a modification—only in the context that <u>Waugh</u> provided the basis for the district court's decision in <u>Pickett</u>. The <u>Jackson</u> Court neither approved nor rejected <u>Waugh</u>, which suggests that the Court did not mean for its decision to apply to initial support orders. This conclusion is bolstered by a passage in Justice Pariente's separate opinion, which addressed initial support obligations as follows:

> The Department of Revenue (DOR), which is the appellant in both of these actions, acknowledges that if the initial child support obligation is established at the time that the parent is incarcerated, then it would be error to impute income to that parent without showing an independent source of income.

<u>Jackson</u>, 846 So. 2d at 498 (Pariente, J., concurring in part and dissenting in part). In supporting this conclusion, Justice Pariente cited <u>Waugh</u> for the proposition that the incarcerated parent must have the capacity to earn the imputed amount while in prison. <u>Id.</u> It seems that DOR conceded in <u>Jackson</u> that income cannot be imputed to a parent incarcerated at the time an initial support obligation is established.

The Fourth District in <u>McCall</u>, however, read <u>Jackson</u> differently. The lower court in <u>McCall</u> had declined to make any provision in the final judgment of dissolution of marriage for the father's share of child support, ruling that he was "in prison and has no income." <u>McCall</u>, 34 So. 3d at 122. Although <u>McCall</u> involved an initial support order rather than a modification of a previously imposed

6

support order, it ordered the lower court to impute income to the father and to follow the procedure set out in Jackson for enforcement of that order. Id. at 123.

IV.

The tension between a child's need for support and an incarcerated parent's inability to provide such support is unavoidable. While the McCall court's solution is not necessarily inconsistent with the rationale of Jackson, we find that it is not supported by the holding of Jackson or by statute. Jackson did not, as the McCall court seems to suggest, simply adopt Mascola and hold an incarcerated parent is voluntarily unemployed and accordingly cannot have a support obligation modified.[1]

Nor did the Jackson Court rule that a court errs in declining to impute income to an incarcerated parent. Instead, the Jackson Court established a procedure that applies specifically to modification requests, and that does not require the court to alter the support obligation in any way prior to the completion of the prison sentence. Indeed, as Justice Pariente noted, the Jackson Court (not to mention DOR itself) acknowledged that it would be error to impute income to an incarcerated parent if the initial child-support obligation is established at the time

---

[1] Indeed, this view is more consistent with Senior Justice Harding's concurring and dissenting opinion, in which he indicated that child-support arrearages should accumulate and vest while the obligor parent is imprisoned. Jackson, 846 So. 2d at 501.

that the parent is incarcerated. It is difficult to conclude that <u>Jackson</u> requires imputation of income when imputation in this circumstance was called "error."[2]

V.

In summary, <u>Jackson</u> does not require imputation of income in this case. We find that the ALJ reasonably applied section 61.30(2)(b) and did not abuse his discretion in declining to impute income to the father. In doing so, we certify conflict with <u>McCall</u>.

AFFIRMED.

OSTERHAUS, J., CONCURS; RAY, J., CONCURS IN RESULT WITH OPINION.

---

[2] This is not to say that a court errs any time it imputes income to an incarcerated parent. Although not at issue here, the clean hands doctrine might permit imputation of income to a prisoner, for instance, whose crime constituted an attempt to evade child support. The court here did not abuse its discretion in refusing to apply this doctrine in this case.

RAY, J., concurring in result.

If I were writing on a clean slate, I would adopt the holding and rationale of the Fourth District Court of Appeal's decision in McCall v. Martin, 34 So. 3d 121 (Fla. 4th DCA 2010), and conclude in this case that the father's incarceration for vehicular manslaughter and resulting loss of income was not a valid reason to deny setting an initial amount of child support attributable to him based on imputed income. I believe the reasoning of McCall adheres to the legislative directive of section 61.30(2)(b), Florida Statutes (2014), is a logical extension of the Florida Supreme Court's decision in Department of Revenue v. Jackson, 846 So. 2d 486 (Fla. 2003), and furthers the child's best interest. Yet, I am unable to reconcile this result with precedent from this Court authorizing the imputation of income only when the parent owing a duty of support has the actual ability to work and is refusing to do so in order to avoid support obligations. See Strassner v. Strassner, 982 So. 2d 1224, 1225 (Fla. 1st DCA 2008) (citing Stebbins v. Stebbins, 754 So. 2d 903, 907 (Fla. 1st DCA 2000)). Because the record in this case does not support such a finding and in the absence of a Florida Supreme Court decision directly on point, I agree that the Administrative Law Judge did not abuse his discretion in declining to impute income to the father.